ROBERT McMILLAN v. WILSON & COMPANY, INC.[1]

February 27, 1942.

No. 33,042.

[1]Reported in 2 N. W. (2d) 838.

*Grannis & Grannis,* for appellant.
*Hugo Hendricks,* for respondent.

Julius J. Olson, Justice.

Plaintiff brought this action to recover overtime pay under the fair labor standards act of 1938 (29 USCA, §§ 201-219) while employed by defendant. The court found for him, judgment was entered, and defendant appeals. No motion was made for amended findings or a new trial. The decisive questions are: (1) The

sufficiency of the evidence to sustain the findings, and (2) sufficiency of the findings to sustain the conclusions of law.

The court found that between October 24, 1938, and June 17, 1939, plaintiff was employed by defendant at its St. Paul plant as a day watchman. During that time defendant was engaged in interstate commerce and in the production of goods for such commerce. Plaintiff's "services were rendered in the course of, in connection with and incidental to the carrying qn of the business of the defendant." He was paid at the rate of $20.75 per week, which the court computed to be 29.6 cents per hour. That was the rate of his pay both before and after the enactment and effective date of the fair labor standards act, and no new arrangement was made either as to hours or rate of pay. His working time was at least 70 hours per week. During the time here involved he worked a total of 869 hours in excess of the statutory limit of 44 hours per week. He has "not been paid time and a half for overtime" as provided by the act. This the court computed to be $128.61, i. e., 14.8 cents per hour for the unpaid overtime. In this sum plaintiff was allowed a recovery, and an equal amount was allowed him as "liquidated damages in addition to said unpaid overtime compensation." He was also awarded what the court deemed "a reasonable sum" for attorney's fees.

The court's memorandum, which is complete and has been most helpful, has met defendant's arguments so adequately that we might readily adopt it here as our opinion. However, we shall refer only to those matters which we deem essential to decision.

1. That defendant is engaged in interstate commerce cannot be denied. It is engaged in the meat packing business and operates extensively throughout the country. It has a plant at Albert Lea, and in 1936 also acquired the McMillan plant in St. Paul. While the operations of the latter have been much reduced, nevertheless it is functioning as a cattle buying plant employing several men. Shipments of livestock are mostly to the Albert Lea plant, but during the rush seasons some of the livestock is shipped to defendant's Chicago plant for slaughter and processing. As re-

marked by the trial court: "It would be difficult to determine what particular facility or what particular activity of the defendant is not essentially a part of its interstate business." In this situation, so the court found, plaintiff's services as a watchman made him an employe in "interstate commerce." We find no trouble in sustaining that conclusion, nor is proof in the record wanting as to the recited facts. While the cases are in conflict as to watchmen being so classified, we think the better reasoned ones support the trial court.

2. In principle this case cannot be distinguished from that of Lefevers v. General Export I. & M. Co. (D. C.) 36 F. Supp. 838, 839, 840, where the rights of a night watchman were involved. The court, in disposing of defendant's claim that he was not engaged in commerce, said that it did "not think that he [the watchman] needs necessarily actually and personally to assist in the processing and preparation of such goods," but that his work in "guarding, caring for and protecting" the goods going into commerce brought him within the act, 29 USCA, § 203(j). Berger v. Clouser (D. C.) 36 F. Supp. 168, 171; Fleming v. A. B. Kirschbaum Co. (D. C.) 38 F. Supp. 204; Fleming v. Pearson Hardwood Flooring Co. (D. C.) 39 F. Supp. 300; and Williams v. General Mills, Inc. (D. C.) 39 F. Supp. 849, sustain that view.

3. The purpose of the act is clear, i. e., the legislative intent was to prescribe maximum hours of labor per week. To help effectuate that purpose, the additional burden was cast upon employers of labor to pay overtime if the workman was engaged beyond the statutory limit. As we said in the recent case of Abroe v. Lindsay Bros. Co. 211 Minn. 136, 139, 300 N. W. 457, 458:

"The employer who violates § 7 is made liable for the unpaid overtime compensation, for liquidated damages, and for attorneys' fees where action is necessary. Right to the liquidated damages arises automatically with a finding of unpaid overtime compensation. Because of the explicit statement by Congress that 'an additional equal amount [shall be allowed] as liquidated damages,' the courts are given no discretion in deciding whether they should

form part of the recovery. [Citing cases.] Sympathy for the position in which some employers find themselves cannot mitigate the application of a rule which Congress has declared mandatory."

4. Nor can defendant secure any reduction of its wage liability under the "provisions of § 7(c) for a fourteen week moratorium in each calendar year" when the provisions of § 7(a) "shall not apply to * * * an employer engaged * * * in handling, slaughtering or dressing poultry or livestock," since, as said by the trial judge, that "must be construed in the light of its context and the purpose of the act." Plaintiff's work was not seasonal. His hours and work "were the same the year around." In this situation, defendant's claim can have, in fact, "no rational basis."

5. As to defendant's claim for a credit of $41.50, which is a payment "for the last two weeks in June 1939 during which time he [plaintiff] did not work," the court's memorandum provides an adequate answer:

"To treat this as a bonus or increased compensation would increase the hourly rate, overtime pay and penalty. The defendant cannot be deemed to have so intended. To credit defendant with this sum on account of unpaid overtime is inconsistent with its stand in this litigation. The logical result is to infer that the employer intended it as a gratuity. It has been so treated."

Plaintiff is allowed $100 as his attorney's fees in this court, plus statutory costs and disbursements.

Judgment affirmed.