# Richmond

## Tidewater Optical Company, Incorporated, etc. v. L. A. Wittkamp.

April 13, 1942.

Record No. 2506.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Son*, for the plaintiff in error.

*Ivor A. Page, Sr., Vivian L. Page* and *Walter A. Page*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This is an action at law brought by L. A. Wittkamp against his former employer, Tidewater Optical Company, Inc., under section 16(b) of the Fair Labor Standards Act of 1938 (Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U. S. C. A., secs. 201, *et seq.*), for "unpaid overtime compensation," "liquidated damages," and a "reasonable attorney's fee". The relevant provisions of the Act, which became effective on October 24, 1938, are found in the margin.[1]

---

[1]

"MINIMUM WAGES

"Sec. 6. (a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) during the first year from the effective date of this section, not less than 25 cents an hour,

"(2) during the next six years from such date, not less than 30 cents an hour,

"(3) after the expiration of seven years from such date, not less than 40 cents an hour, or the rate (not less than 30 cents an hour) prescribed in the applicable order of the Administrator issued under section 8, whichever is lower, and

"(4) at any time after the effective date of this section, not less than the rate (not in excess of 40 cents an hour) prescribed in the applicable order of the Administrator issued under section 8.

"(5)   *   *   *   *   *   *   *   *   *   *

"(b) This section shall take effect upon the expiration of one hundred and twenty days from the date of enactment of this Act.

"(c)   *   *   *   *   *   *   *   *   *

"MAXIMUM HOURS

"Sec. 7 (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date,
unless such employee receives compensation for his employment in excess

The action originated in a warrant before the civil justice of the city of Norfolk where there was a judgment for the plaintiff. The defendant appealed to the Circuit Court of the city of Norfolk, and upon a trial before a jury there was a verdict of $426.58 for the plaintiff, upon which the trial court entered judgment, together with an attorney's fee of $50. The case is before us on a writ of error awarded the defendant employer and its surety.

The first contention of the employer is that this is a suit "for penalties and forfeitures incurred under the laws of the United States," the jurisdiction of which is vested exclusively in the courts of the United States under section 256 of the Judicial Code (28 U. S. C. A., sec. 371).

[■ ■] Although the Fair Labor Standards Act is of recent origin, the precise question has been frequently presented to the courts. These have been practically unanimous in holding that a suit of this character is not one to enforce a penalty within the meaning of section 256 of the Judicial Code (28 U. S. C. A., sec. 371), and that by providing that an action under section 16(b) of the Act (29 U. S. C. A., sec. 216 (b) ) "may be maintained in any court of competent jurisdiction," Congress intended to confer jurisdiction upon both State and

---

of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"(b)  *    *    *    *    *    *    *    *

"(c)  *    *    *    *    *    *    *    *

"(d) This section shall take effect upon the expiration of one hundred and twenty days from the date of enactment of this Act.

"PENALTIES

"Sec. 16 (a)  *    *    *    *    *    *    *    *

"(b) Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

Federal courts. See *Hart* v. *Gregory*, 218 N. C. 184, 10 S. E. (2d) 644, 647, 130 A. L. R. 265; *Forsyth* v. *Central Foundry Co.*, 240 Ala. 277, 198 So. 706, 709; *Tapp* v. *Price-Bass Co.*, 177 Tenn. 189, 147 S. W. (2d) 107, 108; *Stringer* v. *Griffin Grocery Co.* (Tex. Civ. App.), 149 S. W. (2d) 158, 160; *Adair* v. *Traco Division*, 192 Ga. 59, 14 S. E. (2d) 466, 468; *Floyd* v. *Du Bois Soap Co.* (Ohio App.), 38 N. E. (2d) 919, 920.

Wittkamp was employed by the Tidewater Optical Company from September, 1938, until some time in April, 1939, as a "first-class optician". The company is engaged in the manufacture of lenses and eyeglasses, a substantial number of which are shipped in interstate commerce. It, therefore, admits that it is subject to the Fair Labor Standards Act.

Wittkamp was originally hired at a salary of $35 per week, and except for one or two weeks when he was not working full time, he was paid this amount for each week while with the company. According to his testimony, during each of the full-time weeks from November 5, 1938, to April 9, 1939, he worked longer than 44 hours per week, the maximum permitted under section 7(a) (1) of the Act (29 U. S. C. A., sec. 207(a)(1) ). He further testified that the accumulated overtime during this period amounted to 203 hours.

While the company disputes the accuracy of these figures, it admits that Wittkamp averaged 51 hours a week for each full-time week during the same period.

However, it contends that it owes Wittkamp nothing for the overtime because, it says, shortly before the effective date of the Act he agreed to work for the guaranteed total of $35 per week, including both straight time and overtime, regardless of the number of hours he was employed. Wittkamp denied that he made such an agreement.

The company requested the court to instruct the jury that if they believed from the evidence that such an agreement was made between the parties, the verdict should be for the defendant,—that is, that the employee was not entitled to recover overtime or liquidated damages under the statute. This instruction was refused, and properly so, we think.

Although the brief of the company contains neither argument nor authority in support of its position, apparently its contention is based upon the theory that section 7 of the Act (29 U. S. C. A., sec. 207) is satisfied by the payment of the minimum wages prescribed in section 6 (29 U. S. C. A., sec. 206),—that is, by the payment of wages equal to 25 cents for each hour of the statutory workweek of 44 hours, plus time and one-half (37½ cents) for each additional hour of employment in any given week.

In a brief filed by counsel for the Administration of the Wage and Hour Division, United States Department of Labor, as *amicus curiae*, which is quite informative on the principle questions before us, it is demonstrated that while the purpose of section 6 of the Act (29 U. S. C. A., sec. 206) is to establish minimum wages, the purpose of section 7 (29 U. S. C. A., sec. 207) is to regulate the maximum number of hours which an employee may be required to work, and that the latter purpose is induced or promoted by requiring the employer to pay a higher rate for the overtime in excess of the statutory maximum number of hours than is paid for straight time according to the regular rate.

This purpose of section 7 of the Act, as this brief points out, clearly appears from its legislative history and background as well as from its judicial interpretation. See *Bumpus* v. *Continental Baking Co.,* 124 F. (2d) 549; *Missel* v. *Overnight Motor Transportation Co., Inc.,* 126 F. (2d) 98 (Certiorari granted February 16, 1942, — U. S. —, 62 S. Ct. 641, — L. Ed. —.).

In these recently decided cases, it is held that the "regular rate" at which overtime is computed under section 7 (29 U. S. C. A., sec. 207) is not synonymous with the minimum wage schedule prescribed in section 6 (29 U. S. C. A., sec. 206); that the mere fact that an employee is paid the minimum wage prescribed in the latter section does not relieve the employer from the penalty of overtime payments where the hours of the workweek exceed the maximum prescribed in section 7 (29 U. S. C. A., sec. 207); and that overtime is incurred when the maximum number of hours is exceeded, even though the employee is entitled under his con-

tract of employment to substantially more than the minimum wages set by section 6 (29 U. S. C. A., sec. 206). In both cases the court declined to follow the contrary view as expressed in *Fleming* v. *Belo Corp.*, 121 F. (2d) 207.[2]

If the company's contention that it and the employee could, by agreement, fix the rate of compensation at a total of $35 per week, regardless of the number of hours worked, be sound, then the purpose of section 7 (29 U. S. C. A., sec. 207), which is to require additional compensation as the price of overtime employment, could be circumvented and nullified. For example: if 25 cents an hour be taken as Wittkamp's regular rate, with a guaranteed weekly salary of $35, under the agreement contended for by the company, it could have worked him 108 hours a week without paying him any additional compensation for overtime. (44 hours at 25 cents equals $11, plus 64 hours at 37½ cents equals $24.)

The precise situation was before the court in *Fleming* v. *Carleton Screw Products Co.* (D. C., Minn.), 37 F. Supp. 754.[3] There, as here, shortly before the effective date of the Act, the employer established an agreed rate of pay 10 cents less than what had been paid. Time and one-half based on the reduced rate was to be paid for all overtime work done in excess of 44 hours, and if the total sum paid thus computed did not amount to as much as the employee would have received for the same number of hours worked at his previous hourly rate, the employer would add as a bonus or gratuity at the end of each week such additional sum as might be necessary to guarantee to the employee the same weekly earnings he had theretofore received at his straight time hourly rate. Speaking of this agreement and its effect, the court said (p. 757):

"It seems to me that the construction contended for by defendant to the effect that employer and employee may agree on a regular rate of pay regardless of what compensation the employee actually receives, will permit employers to

---

[2] Certiorari granted, October 27, 1941, *Fleming* v. *Belo Corp.* (U. S.), 62 S. Cr. 137, 86 L. Ed. ——.

[3] Now on appeal to the Circuit Court of Appeals for the Eighth Circuit.

avoid the obligations imposed by Section 7 and will completely nullify the overtime provisions therein contained. If an employer is permitted to establish an 'agreed' rate of pay 10 cents below that which it in fact is, as plaintiff points out in his brief there is no reason why the regular rate could not be 'stipulated' for purposes of overtime compensation at 20 or 30 cents below what it actually is and remove the penalty of Section 7 entirely. The fact that employer and employee 'agree' to a rate of pay which does not represent that at which the employee is really employed cannot preclude the operation of Section 7, for private agreements which are inconsistent with wage and hour statutes must yield to the broader public policy declared in those acts." (Citing cases.) See also, *Floyd* v. *DuBois Soap Co.*, *supra* (38 N. E. (2d), at page 921), and cases there cited.

This brings us to the question as to what is the "regular rate" at which the employee's overtime must be computed under section 7 (29 U. S. C. A., sec. 207) of the Act. The court below instructed the jury, at the request of the plaintiff, "that if they believe from the evidence that the plaintiff worked 203 hours in excess of the hours he would have worked at the schedule of a 44-hour workweek, and that his regular rate of employment was $35 per week, then he was entitled to the sum of $1.18 per hour for overtime * * *."

Here the theory is that the regular rate is arrived at by dividing the weekly wage of $35 by the statutory maximum of 44 hours, which results in a straight time rate of 79 cents per hour and a time and one-half rate of $1.18 per hour. No authority is cited in support of this interpretation of the statute and it is contrary to that adopted by the Administrator of the Wage and Hour Division.

In the Administrator's "Interpretative Bulletin No. 4" (November, 1940, revision) it is said:

"6. Overtime must be compensated at a rate not less than one and one-half times the regular rate of pay at which the employee is actually employed. The regular rate of pay at which the employee is actually employed is not the minimum

wage rate set in the act, but is the employee's regular hourly rate of pay. * * *

"10. If the employee is on a weekly salary basis, his regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the regular number of hours worked, or if no regular number of hours is worked, by the total number of hours worked each week. If the employee works a regular number of hours, the regular hour rate of pay will be a fixed rate, remaining unchanged from week to week. But if the employee works a fluctuating and not a regular number of hours, his regular hourly rate of pay will be the average hourly rate for the week and will vary from week to week. * * *"

This method of computation prescribed by the Administrator was approved in *Missel* v. *Overnight Motor Transportation Co., Inc., supra* (126 F. (2d) at pages 109, 110), where other cases dealing with the subject are collected. See also, *Bumpus* v. *Continental Baking Co., supra* (124 F. (2d) at page 553); *Floyd* v. *Du Bois Soap Co., supra* (38 N. E. (2d) at page 921).

■ Applying the Administrator's method of computation, which we adopt, Wittkamp's overtime for a "fluctuating" workweek totaling 51 hours should be calculated as follows: Dividing the weekly salary of $35 by the 51 hours worked gives 68.6 cents as the "regular rate at which he is employed." His total earnings for the week would then be as follows:

44 hours at 68.6 cents (straight time) . . . . . . . . .$30.18
7 hours at $1.03 (overtime at 1½ x 68.6 cents)   7.21
                                                 ———
                    Total. . . . . . . . . . . . . . . . . . . . .$37.39
                                                 ———

Since he was actually paid $35 for the 51-hour week, the company would owe him an additional $2.39 for overtime, plus an additional $2.39 as liquidated damages under section 16(b) (29 U. S. C. A., sec. 216(b) ). The amount due for overtime and liquidated damages for each week should be calculated in a similar manner.

It follows from what we have said that the instruction granted by the lower court fixing the method of computation of Wittkamp's overtime and liquidated damages was erroneous.

It is further assigned as error that the court permitted Wittkamp to show that in a suit brought by the Federal Administrator of the Wage and Hour Division against the Tidewater Optical Company, Inc., in the United States District Court at Norfolk, the company had been enjoined from violating the Fair Labor Standards Act.

In our opinion such evidence was not admissible. Wittkamp was not a party to that suit and hence the decree in that cause was not *res judicata* in the present action. This evidence was prejudicial to the Tidewater Optical Company. It tended to show that the company had violated the Act in question on other occasions, and might have induced the jury to believe that it had likewise done so in Wittkamp's case.

The court should likewise have excluded evidence that other employees of the Tidewater Optical Company had made claims against it for overtime. Such evidence was irrelevant and likely to prejudice the minds of the jury.

The judgments complained of will be reversed and the case remanded for a new trial in conformity with the views here expressed.

*Reversed and remanded.*