## OVERNIGHT MOTOR TRANSPORTATION CO., INC. *v.* MISSEL.

No. 939.   Argued April 6, 7, 1942.—Decided June 8, 1942.

*Messrs. J. Ninian Beall* and *John R. Norris* for petitioner.

*Mr. George A. Mahone,* with whom *Messrs. W. Hamilton Whiteford* and *William O. Tydings* were on the brief, for respondent.

Briefs of *amici curiae* were filed by *Solicitor General Fahy* and *Messrs. Arnold Raum, Warner W. Gardner, Mortimer B. Wolf,* and *Jacob D. Hyman* on behalf of the Administrator of the Wage and Hour Division, U. S. Department of Labor, urging affirmance; and by *Mr. J. Ninian Beall* on behalf of the American Trucking Associations, Inc., in support of petitioner.

MR. JUSTICE REED delivered the opinion of the Court.

This case involves the application of the overtime section of the Fair Labor Standards Act of 1938 [1] to an employee working irregular hours for a fixed weekly wage.

---

[1] "SEC. 7. (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

(1) for a workweek longer than forty-four hours during the first year from the effective date of this section.

(2) for a workweek longer than forty-two hours during the second year from such date, or

(3) for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 52 Stat. 1063; 29 U. S. C. § 207.

Respondent, Missel, was an employee of the petitioner, Overnight Motor Transportation Company, a corporation engaged in interstate motor transportation as a common carrier. He acted as rate clerk and performed other incidental duties, none of which were connected with safety of operation. The work for which he was employed involved wide fluctuations in the time required to complete his duties. The employment of respondent began before the effective date of the Fair Labor Standards Act, October 24, 1938, and terminated October 19, 1940. Until November 1, 1938, his salary was $25.50 per week and thereafter $27.50. Time records are available for only a third of the critical period, and these show an average workweek of 65 hours, with a maximum of 80 for each of two weeks in the first year of the Act's operation and a maximum of 75 hours in each of three weeks in the second year. Nothing above the weekly wage was paid, because these maximum workweeks, computed at the statutory minimum rates with time and a half for overtime for the years in question, would not require an addition to the weekly wage.

Respondent brought a statutory action to recover alleged unpaid overtime compensation in such sum as might be found due him, an additional equal amount as liquidated damages, and counsel fee.[2] The trial court, refus-

[2] "SEC. 16. . . .

"(b) Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similiarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs,

ing to hear evidence on the precise amount claimed, decided in favor of the petitioner on the ground that an agreement for a fixed weekly wage for irregular hours satisfied the requirements of the Act. Under such circumstances the court was of the view that pay would be adequate which amounted to the required minimum for the regular hours and time and a half the minimum for overtime. 40 F. Supp. 174. The Circuit Court of Appeals reversed with directions to enter judgment for the plaintiff in accordance with its opinion, an order which we interpret as authorizing a hearing in the trial court as to the amounts due. 126 F. 2d 98. As the questions involved were important in the administration of the Fair Labor Standards Act, we granted certiorari.

Petitioner renews here its contentions that the private right to contract for a fixed weekly wage with employees in commerce is restricted only by the requirement that the wages paid should comply with the minimum wage schedule of the Fair Labor Standards Act, § 6, with overtime pay at time and a half that minimum, that in any event the Act does not preclude lump sum salaries in excess of the minimum, and that a contrary interpretation of the statute would render it unconstitutional.

It is plain that the respondent as a transportation worker was engaged in commerce within the meaning of the Act,[3] and unless specifically exempted was entitled to whatever benefits the overtime provisions conferred.

While now conceding that *United States* v. *Darby,* 312 U. S. 100, settles the constitutional power of Congress to

---

allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 52 Stat. 1069, 29 U. S. C. § 216.

[3] "SEC. 3. As used in this Act—

·   ·   ·   ·

(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." 52 Stat. 1060, 29 U. S. C. § 203.

legislate against labor conditions detrimental to a minimum standard of living required for the general well-being of workers, petitioner argues that there is no power under the Constitution to regulate the hours or wages of workers whose pay, in every instance, at least equals the minimum and whose hours are not injurious to health. Freedom of contract between employer and employee, it is urged, is destroyed by such an interpretation.[4] But hours or wages not patently burdensome to health may yet be subject to regulation to achieve other purposes. We assume here the statutory objectives discussed later, i. e., that the Act is aimed at hours as well as wages. The commerce power is plenary,[5] may deal with activities in connection with production for commerce,[6] and, as said in the *Darby* case, may extend "to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce." p. 118. Long hours may impede the free interstate flow of commodities by creating friction between production areas with different length work weeks, by offering opportunities for unfair competition, through undue extension of hours, and by inducing labor discontent apt to lead to interference with commerce through interruption of work. Overtime pay probably will not solve all problems of overtime work, but Congress may properly use it to lessen the irritations. Substandard labor conditions were deemed by Congress to be "injurious to the

---

[4] "It is Petitioner's contention that though the constitutionality is clearly settled as to the question of correcting 'sub-standard labor conditions,' a construction of the Act which has no relationship whatsoever to 'sub-standard labor conditions' would nonetheless be unconstitutional, for the potentiality of such a construction is to destroy freedom of contract between employer and employee."

[5] *Labor Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1, 37.

[6] *Santa Cruz Co.* v. *Labor Board,* 303 U. S. 453, 464.

commerce and to the states from and to which the commerce flows." *United States* v. *Darby,* 312 U. S. 100, 115. To protect that commerce from the consequences of production of goods under substandard conditions, it may choose means reasonably adapted to those ends, including regulation of intrastate activities, p. 121, by minimum wage and maximum hour requirements, p. 123. Compare *Santa Cruz Co.* v. *Labor Board,* 303 U. S. 453, 466. If overtime pay may have this effect upon commerce, private contracts made before or after the passage of legislation regulating overtime cannot take the overtime transactions "from the reach of dominant constitutional power." *Norman* v. *B. & O. R. Co.,* 294 U. S. 240, 306–311. If, in the judgment of Congress, time and a half for overtime has a substantial effect on these conditions, it lies with Congress' power to use it to promote the employees' well-being.

*Statutory Construction.* The petitioner attacks the basic conceptions upon which the Circuit Court of Appeals determined that the compensation paid by the respondent violated § 7 (a) of the Act.[7] That court felt that "one of the fundamental purposes of the Act was to induce work-sharing and relieve unemployment by reducing hours of work." We agree that the purpose of the Act was not limited to a scheme to raise substandard wages first by a minimum wage and then by increased pay for overtime work. Of course, this was one effect of the time and a half provision, but another and an intended effect was to require extra pay for overtime work by those covered by the Act even though their hourly wages exceeded the statutory minimum. The provision of § 7 (a) requiring this extra pay for overtime is clear and unambiguous. It calls for 150% of the regular, not the minimum, wage. By this requirement, although overtime was not flatly prohibited,

[7] Note 1 *supra.*

financial pressure was applied to spread employment to avoid the extra wage and workers were assured additional pay to compensate them for the burden of a workweek beyond the hours fixed in the Act. In a period of widespread unemployment and small profits, the economy inherent in avoiding extra pay was expected to have an appreciable effect in the distribution of available work. Reduction of hours was a part of the plan from the beginning. "A fair day's pay for a fair day's work" was the objective stated in the Presidential message which initiated the legislation.[8] That message referred to a "general maximum working week," "longer hours on the payment of time and a half for overtime" and the evil of "overwork" as well as "underpay." The message of November 15, 1937, calling for the enactment of this type of legislation referred again to protection from excessive hours.[9] Senate Report No. 884, just cited, page 4, the companion House Report [10] and the Conference report [11] all spoke of maximum hours as a separately desirable object. Indeed, the form of the Act itself in setting up two sections of standards, § 6 for wages and § 7 for hours, emphasizes the duality of the Congressional purpose. The existence of such a purpose is no less certain because Congress chose to use a less drastic form of limitation than outright prohibition of overtime. We conclude that the Act was designed to require payment for overtime at time and a half the regular pay, where that pay is above the minimum, as well as where the regular pay is at the minimum.[12]

---

[8] May 24, 1937, 81 Cong. Rec. 4983, 75th Cong., 1st Sess., Sen. Rep. No. 884 on S. 2475, July 6, 1937, p. 2.

[9] 82 Cong. Rec. 11, 75th Cong., 2d Sess.

[10] House Rep. 1452, 75th Cong., 1st Sess., pp. 14, 15.

[11] 83 Cong. Rec. 9246, 9254.

[12] Cf. *Bumpus* v. *Continental Baking Co.*, 124 F. 2d 549, 551; *Carleton Screw Products Co.* v. *Fleming*, 126 F. 2d 537, 539; *Tidewater Optical Co.* v. *Wittkamp*, 179 Va. 545, 551, 19 S. E. 2d 897, 899; *McMillan* v. *Wilson & Co.*, 212 Minn. 142, 2 N. W. 2d 838, 839; see *United States* v. *Darby*, 312 U. S. 100, 125.

We now come to the determination of the meaning of the words "the regular rate at which he is employed." Since we have previously determined in this opinion, in the discussion of petitioner's objection to the application of the Act on the ground of unconstitutionality, that the scope of the commerce power is broad enough to support federal regulation of hours, we are concerned at this point only with the method of finding the regular rate under the contract with respondent. Congress might have sought its objective of clearing the channel of commerce of the obstacles of burdensome labor disputes by minimum wage legislation only. We have seen that it added overtime pay. The wages for minimum pay are expressed in terms of so much an hour. Sec. 6 (a) (1)—"Not less than 25 cents an hour" with raises for succeeding years or by order of the Administrator under § 8. Cf. *Opp Cotton Mills* v. *Administrator*, 312 U. S. 126. Neither the wage, the hour nor the overtime provisions of §§ 6 and 7 on their passage spoke specifically of any other method of paying wages except by hourly rate.[13] But we have no doubt that pay by the week, to be reduced by some method of computation to hourly rates, was also covered by the Act.[14] It is likewise abundantly clear from the words of § 7 that the unit of time under that section within which to distinguish regular from overtime is the week. "No employer shall . . . employ any of his employees . . . (1) for a workweek longer than forty-four hours . . ." § 7 (a) (1).[15]

---

[13] Sec. 3 (m) defined wage to include board, lodging or other facility customarily furnished employees. The Joint Resolution of June 26, 1940, for work relief and relief for the fiscal year 1941, § 3 (f) deals with piece work in Puerto Rico or the Virgin Islands. 54 Stat. 611, 616.

[14] Any other interpretation would render almost useless the exemptions from the Act of employees in "executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman." § 13 (a) (1). Such employees are rarely paid by the hour.

[15] The legislative history of the Fair Labor Standards Act is inconclusive as to the intended meaning of the words "the regular rate at which

No problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly wage for regular contract hours which are the actual hours worked,[16] to similar computations for employees on hourly rates. Where the employment contract is for a weekly wage with variable or fluctuating hours the same method of computation produces the regular rate for each week. As that rate is on an hourly basis, it is regular in the statutory sense, inasmuch as the rate per hour does not vary for the entire week, though week by week the regular rate varies with the number of hours worked. It is true that the longer the hours, the less the rate and the pay per hour. This is not an argument, however, against this method of determining the regular rate of employment for the week in question. Apart from the Act, if there is a fixed weekly wage regardless of the length of the workweek, the longer the hours the less are the earnings per hour. This method of computation has been approved by each circuit court of appeals which has considered such problems. See *Warren-Bradshaw Drilling Co.* v. *Hall*, 124 F. 2d 42, 44; *Bumpus* v. *Continental Baking Co.*, 124 F. 2d 549, 552, cf. *Carleton Screw Products Co.* v. *Fleming*, 126 F. 2d 537, 541. It is this quotient which is the "regular rate at which an employee is employed" under contracts of the types described and applied in this paragraph for fixed weekly compensation for hours, certain or variable.[17]

---

he is employed." The committee reports do not discuss them. The bill which came out of the conference and was adopted changed "regular hourly rate" of previous bills (S. 2475, introduced May 24, 1937; H. R. 7200, introduced May 24, 1937; and S. 2475 in the Senate, April 20, Calendar Day May 25, 1938) to "regular rate." Conference Report, 83 Cong. Rec. 9247, 75th Cong., 3rd Sess. "Hourly" may have been omitted as not descriptive of piecework or salary payments.

[16] Wage divided by hours equals regular rate. Time and a half regular rate for hours employed beyond statutory maximum equals compensation for overtime hours.

[17] This has been the Administrator's interpretation of the Act. Interpretative Bulletin No. 4 issued October 21, 1938, revised November,

Petitioner invokes the presumption that contracting parties contemplate compliance with law and contends that accordingly there is no warrant for construing the contract as paying the employee only his base pay or "regular rate," regardless of hours worked. It is true that the wage paid was sufficiently large to cover both base pay and fifty per cent additional for the hours actually worked over the statutory maximum without violating section six. But there was no contractual limit upon the hours which petitioner could have required respondent to work for the agreed wage, had he seen fit to do so, and no provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage. Implication cannot mend a contract so deficient in complying with the law. This contract differs from the one in *Walling* v. *Belo Corp., post,* p. 624, where the contract specified an hourly rate and not less than time and a half for overtime, with a guaranty of a fixed weekly sum, and required the employer to pay more than the weekly guaranty where the hours worked at the contract rate exceeded that sum.

In the Circuit Court of Appeals [18] it was held that the liquidated damages provision, § 16(b) of the Act, 52 Stat. 1069, was mandatory on the courts, regardless of the good

1940. While the interpretative bulletins are not issued as regulations under statutory authority, they do carry persuasiveness as an expression of the view of those experienced in the administration of the Act and acting with the advice of a staff specializing in its interpretation and application. Cf. *United States* v. *American Trucking Assns.,* 310 U. S. 534, 549; *United States* v. *Darby,* 312 U. S. 100, 118, n. 2; *Graves* v. *Armstrong Creamery* Co., 154 Kan. 365, 370, 118 P. 2d 613, 616. Even negative construction may be significant. *Trade Comm'n* v. *Bunte Bros.,* 312 U. S. 349, 351, 352.

Regulations on records issued pursuant to § 11 (a) have since September 15, 1941, referred to Interpretative Bulletin 4 for the method of computation. 6 Fed. Reg. 4695, n. 9.

[18] 126 F. 2d 98, 111, and cases cited which so construed the Act.

faith of the employer or the reasonableness of his attitude. Petitioner attacks this conclusion as a denial of due process because, if the damage provision is mandatory, the employer is "without opportunity to test the issues before the courts," citing *Ex parte Young,* 209 U. S. 123, *Wadley Southern Ry. Co.* v. *Georgia,* 235 U. S. 651, and other similar cases. Petitioner points out that, if there was a failure to pay the statutory overtime, it resulted from an inability to determine whether the employee was covered by the Act.

Section 13 (b) (1)[19] exempts from § 7 employees for whom the Interstate Commerce Commission has power to establish maximum hours of service. This exemption was derived from the Motor Carrier Act of 1935, 49 Stat. 543, which authorized the Commission to regulate "maximum hours of service of employees." A definitive order leaving employees with the duties of respondent subject to the Fair Labor Standards Act was not passed by the Commission until March 4, 1941,[20] after respondent's employment ended. This conclusion, however, was foreshadowed by the ruling of the Commission, December 29, 1937[21] that it would limit regulations concerning maximum hours to employees whose functions affected the safety of operations. Other orders, bulletins and opinions pointing to the final conclusion intervened.[22] These various determinations now make it clear that respondent

[19] "SEC. 13. . . . (b) The provisions of section 7 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935; . . ." 52 Stat. 1068; 29 U. S. C. § 213 (b).

[20] Ex parte MC–2, 28 M. C. C. 125.

[21] Ex parte MC–2, 3 M. C. C. 665, 667.

[22] March 25, 1939, Interpretative Bulletin, Wage & Hour Division No. 9; May 9, 1939, Ex parte MC–28, 13 M. C. C. 481, 488; June 15, 1939, Ex parte MC–C–139, 16 M. C. C. 497; May 27, 1940, *United States* v. *American Trucking Assns.,* 310 U. S. 534.

was subject at all times since the effective date of the Fair Labor Standards Act to its provisions. The Interstate Commerce Commission never had the power to regulate his hours.

Perplexing as petitioner's problem may have been, the difficulty does not warrant shifting the burden to the employee. The wages were specified for him by the statute,[23] and he was no more at fault than the employer. The liquidated damages for failure to pay the minimum wages under §§ 6 (a) and 7 (a) are compensation, not a penalty or punishment by the Government.[24] Cf. *Huntington* v. *Attrill*, 146 U. S. 657, 667, 668, 674, 681; *Cox* v. *Lykes Brothers*, 237 N. Y. 376, 143 N. E. 226. The retention of a workman's pay may well result in damages too obscure

---

[23] Cf. *Labor Board* v. *Electric Vacuum Cleaner Co.*, 315 U. S. 685, 697–698.

[24] The Government has collected the cases under the Act upon the point: "One line of cases holds that the 'double damages' do not constitute a penalty incurred under the laws of the United States within the meaning of §§ 24(9) and 256 of the Judicial Code (28 U. S. C. §§ 41(9) and 371). *Robertson* v. *Argus Hosiery Mills*, 121 F. 2d 285, 286 (C. C. A. 6th), certiorari denied, 314 U. S. 681; *Stewart* v. *Hickman*, 36 F. Supp. 861 (W. D. Mo.); *Kuligowski* v. *Hart*, 43 F. Supp. 207, 4 Wage Hour Rept. 203 (N. D. Ohio); *Wingate* v. *General Auto Parts Co.*, 40 F. Supp. 364 (W. D. Mo.); *Barron* v. *F. H. E. Oil Co.*, 4 Wage Hour Rept. 551 (W. D. Tex.); *Hart* v. *Gregory*, 218 N. C. 184, 10 S. E. 2d 644; *Forsyth* v. *Central Foundry Co.*, 240 Ala. 277, 198 So. 706; *Graves* v. *Armstrong Creamery Co.*, 154 Kan. 365, 118 P. 2d 613; *Emerson* v. *Mary Lincoln Candies*, 173 Misc. 531, 17 N. Y. S. 2d 851; affirmed 261 App. Div. 879, 26 N. Y. S. 2d 489; affirmed, 287 N. Y. 33, 38 N. E. 2d 234; *Abroe* v. *Lindsay Bros. Co.*, 300 N. W. 456 (S. Ct. Minn.); *Tapp* v. *Price-Bass Co.*, 147 S. W. 2d 107 (S. Ct. Tenn.); *Duke* v. *Helena-Glendale Ferry Co.*, 159 S. W. 2d 74, 5 Wage Hour Rept. 206 (S. Ct. Ark.); *Dennis* v. *Equitable Equipment Co.*, 7 So. 2d 397 (Ct. App. La.); *Adair* v. *Traco Division*, 192 Ga. 59, 14 S. E. 2d 466. . . . The other line of cases holding § 16 (b) to be remedial rather than penal involves determination of the applicable statute of limitations. *Collins* v. *Hancock*, 4 Wage Hour Rept. 522 (D. La. Caddo Parish); *Tucker* v. *Hitchcock*, No. 370, S. D. Fla., Oct. 2, 1941; *Klotz* v. *Ippolito*, 40 F. Supp. 422 (S. D. Texas)."

584

and difficult of proof for estimate other than by liquidated damages. *Atchison, T. & S. F. Ry. Co.* v. *Nichols,* 264 U. S. 348, 351; *James-Dickinson Co.* v. *Harry,* 273 U. S. 119. Nor can it be said that the exaction is violative of due process. It is not a threat of criminal proceedings or prohibitive fines, such as have been held beyond legislative power by the authorities cited by petitioner. Even double damages treated as penalties have been upheld as within constitutional power.[25]

*Affirmed.*

The CHIEF JUSTICE concurs in the result. MR. JUSTICE ROBERTS dissents.

---

[25] Cf. *Missouri Pacific Ry. Co.* v. *Humes,* 115 U. S. 512; *Minneapolis & St. Louis Ry. Co.* v. *Beckwith,* 129 U. S. 26; *Kansas City Southern Ry. Co.* v. *Anderson,* 233 U. S. 325.