## RELIANCE STORAGE & INSPECTION CO., Inc., v. HUBBARD.

### Civ. A. No. 68.

District Court, W. D. Virginia, at Danville.

July 3, 1943.

E. Walton Brown, of Danville, Va., for plaintiff.

Aiken & Sanford, of Danville, Va., for defendant.

BARKSDALE, District Judge.

For a number of years, plaintiff, Reliance Storage & Inspection Company, Inc., has been engaged in the business of storing in Danville, Virginia, for compensation, leaf tobacco purchased by the large tobacco companies in the warehouses of Danville and elsewhere, packed in hogsheads and hauled to the building of plaintiff for storage. The hogsheads of tobacco are hauled to plaintiff's building by the owners, and left in storage there until the owners desire to remove them for further ageing or manufacture. The period of storage in plaintiff's building averages about six months. All the tobacco stored by the plaintiff is ultimately manufactured and sold by the owners in the form of cigarettes or other tobacco products, both within the State of Virginia and throughout the world.

The defendant, for the period from October 24, 1938, through July 10, 1942, was employed by the plaintiff as nightwatchman, with the customary duties of such employment, to protect the building and the stored tobacco from fire, theft and depredation. Defendant's employment was for longer hours, and at lesser wages, than those required by the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219.

Plaintiff instituted this action for a declaratory judgment to determine whether or not defendant was within the coverage of the Act. Defendant filed his counterclaim, asserting that he was within the coverage of the Act and setting out in detail the amount of money which he asserted the plaintiff was indebted to him. Both plaintiff and defendant have filed their motions, with supporting affidavits, for summary judgments in their favor.

I am satisfied that the employee here was engaged in "commerce" and also "in the production of goods for commerce", as these terms are used in Sections 206 and 207 of the Act. The Supreme Court has held that leaf tobacco "enters the stream of commerce", at "the marketing warehouse", which is described as the "throat". Mulford v. Smith, 307 U.S. 38, 47, 59 S.Ct. 648, 652, 83 L.Ed. 1092. Certainly, it would seem beyond question that, after leaf tobacco has been purchased by such com-

panies as Liggett & Myers, Imperial Tobacco Company, P. Lorillard & Company, and R. J. Reynolds Tobacco Company, packed in hogsheads, and hauled from the tobacco warehouses to a place of storage, for ultimate manufacture and sale in the form of cigarettes and other manufactured tobacco products throughout the world, it has entered the stream of commerce, and one who stores it, as does plaintiff here, while it is awaiting manufacture, is engaged in commerce, and the employee who protects it is also engaged in commerce.

In Section 203(j) of the Act, it is provided that: "* * * an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

■ It seems to me clear that the doctrine enunciated by Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L. Ed. 1638, requires the conclusion that the employee here was engaged in an "occupation necessary to the production" of the manufactured product of the stored tobacco. See also Lefevers v. General Export, etc., Co., D.C., 36 F.Supp. 838, and Interpretative Bulletin No. 1 of the Wage & Hour Division of the United States Department of Labor, which, although not binding on the Courts, is entitled to great weight. United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

It therefore follows that it is my conclusion that the employee here is within the coverage of the Act and is entitled to a judgment in his favor.

■ Plaintiff has pled the statute of limitations, and contends that the three-year statute of limitation, Section 5810, Code of Virginia, applicable to contracts express or implied, not in writing, is applicable to the unpaid part of the wages required by the Act, and that the one-year statute, Section 5818, Code of Virginia, is applicable to the double compensation feature, because it is a penalty. It seems to be generally held that the applicable statute of limitations of the state in which the cause of action arises, is applicable to the cause of action under the Act.

I am of the opinion that the double compensation provision is not a penalty. The Act itself denominates it as "liquidated damages", and both the Supreme Court and the court of last resort in Virginia have held that it is not a penalty. Overnight Motor Transportation Co., Inc., v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682: "The liquidated damages for failure to pay the minimum wages under sections 6(a) and 7(a) are compensation, not a penalty or punishment by the Government." 316 U.S. at page 583, 62 S.Ct. at page 1223, 86 L.Ed. 1682; Tidewater Optical Co. v. Wittkamp, 179 Va. 545, 19 S.E.2d 897.

■ It is therefore my conclusion that the three-year statute of limitations, Section 5810, Virginia Code, is applicable to both the unpaid wages under the Act and the double liability. This action for unpaid compensation was instituted by the defendant employee by way of counterclaim on April 28, 1943, and defendant employee is therefore entitled to recover double the amount of wages which were due him and unpaid during the period of three years next preceding that date, together with a reasonable attorney's fee.

What this amount is, cannot be ascertained from the pleadings in their present form, and therefore final judgment for a specific sum of money cannot now be entered for defendant upon his motion for judgment upon the pleadings. However, it would seem, from statements of counsel in argument, that there is no real conflict as to the facts. Counsel for the Administrator, who appeared at the hearing upon the motions as an amicus curiae, stated that by reason of the fact that the storage of leaf tobacco was a seasonal industry, there had been an administrative determination that such employers were entitled to some credit fixed by the Administrator. Of course, the plaintiff here is entitled to the benefit of this.

■ I also note from plaintiff's supplemental affidavit the assertion that the building in which defendant was employed was empty about one-half of each year. It would not seem that defendant was engaged, either in commerce, or the production of goods for commerce, while he was protecting an empty building.

It would therefore seem that it should be quite simple for counsel to stipulate the amount which the defendant is entitled to

recover under my conclusions as herein set out, the plaintiff preserving his exceptions to my rulings in the stipulation. If the amount cannot be stipulated, a trial will be awarded solely to determine the amount which defendant is entitled to recover.