**SAWYER v. SELIG MFG. CO.**
**Civil Action No. 6851.**

District Court, D. Massachusetts.

Nov. 7, 1947.

320

· Charles S. Murphy, Philip J. Murphy, and Rene A. Brassard, all of Worcester, Mass., for plaintiff.

Cohn & Riemer and Harry Pollack, all of Boston, Mass., for defendant.

FORD, District Judge.

This is an action by a former employee of the defendant under the provisions of Section 16(b) of the Fair Labor Standards Act of 1938, hereinafter called the Act, 29 U.S.C.A. § 201 et seq., to recover unpaid overtime compensation, liquidated damages, and attorneys' fees. All facts necessary to bring the claim within the provisions of the Act were stipulated, and the only issues now involved are: (I) The number of hours worked per week by plaintiff during the period July 12, 1943 through September 30, 1944; (II) whether plaintiff is a bona fide executive, hence an exempt employee, under Section 213(a) (1). ·

The plaintiff was employed by the defendant corporation in May, 1943, as a worker in the jungle hammock packing department on an hourly wage basis. .On July 12, 1943, he was given a salary of $40 per week and made assistant foreman in the para-chute packing department. He remained an assistant foreman in this department, and later in the sleeping bag department, till well after the period in dispute. His salary was increased to $45 on August 2, 1943, and to $50 on October 25, 1943. There is no dispute that the salary paid was a steady and fixed weekly salary regardless of the hours worked during each week, and that defendant did not pay the plaintiff any overtime compensation at one and one-half times the regular rate for hours in excess of forty during the period involved. Section 207 of the Act.

I.

Hours Worked.

The testimony regarding the number of hours worked per week by plaintiff is in direct conflict. Defendant's witness Rosbury, a foreman in the parachute department of the defendant, testified that assistant foremen, including the plaintiff, worked one to two hours longer per day than regular employees (who worked 48 hours per week), or from 54 to 60 hours per week. On the other hand, the plaintiff testified that he worked the following hours per week:

(a) July 12, 1943, through July 31, 1943—70 hours per week—7 A.M. to 8 P.M., Monday through Friday; 7 A.M. to 6 P.M., Saturday. 1 hour lunch.

(b) August 2, 1943, through October 23, 1943—76½ hours per week—7 A.M. to 4:30 P.M., 5 P.M. to 10 P.M., Monday through Friday; 7 A.M. to 5 P.M., Saturday. 1 hour lunch.

(c) October 25, 1943, through December 31, 1943—85½ hours per week—7 A.M. to 11 P.M., Monday through Friday. I infer that there was 1 hour for lunch and ½ hour break between shifts. 7 A.M. to 9 P. M., Saturday. I infer that there was 1 hour for lunch. Plaintiff was absent from work because of sickness for three days during this period, the precise dates being unknown.

(d) January 3, 1944, through September 30, 1944—70 hours per week—7 A.M. to 8 P.M., Monday through Friday. 7 A.M. to 6 P.M., Saturday. 1 hour lunch. Plaintiff received a two-week vacation with pay

July 16 through July 28, 1944. He also received overtime compensation of $9.90 for work done on January 29th.

The period July 12, 1943, through September 30, 1944, was during World War II. The defendant was engaged in war production for the United States government, and it was testified that the times were hectic. It was not unusual during those times for men to work extraordinarily long hours in war plants. Under these circumstances, plaintiff's claims of having worked 70 to 85½ hours per week are not extravagant. Defendant's evidence that assistant foremen worked only 54 to 60 hours per week does not, on the other hand, convince the court. In the five weeks following September 30, 1944, when defendant kept records of plaintiff's hours, plaintiff worked 76, 77, 71, 72, and 73 hours per week, a single shift being in operation at the time. He was doing the same type of work as before. At this point the defendant admits plaintiff was a working-foreman, although no change in classification was made on the books of the company. Thereafter, his number of hours per week fell generally below 70, and often below 60. But he was now receiving overtime compensation, and it is a reasonable inference that the reduction of hours resulted from the compensation for overtime. During periods (b) and (c), the factory was on a "Victory Shift" or a double shift, which accounts for the added hours.

I find as a fact from the evidence that the plaintiff did work the hours outlined in the above schedule (a), (b), (c), and (d).

## II.

### Executive Capacity.

Section 213(a) broadly defines exemptions: "The provisions of Sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive * * * capacity * * * (as such terms are defined and delimited by regulations of the Administrator) * * *."[1]

Plaintiff admits that he is within the terms of (A), (B), (C), (D), and (E) of Part 541.1 of the Regulations, but contends that during the workweeks in question he was a working foreman under (F), rather than a bona fide executive. Defendant contends that at no time from July 12, 1943, to September 30, 1944, did the plaintiff perform the same type of work as nonexempt employees under his direction to the extent required by (F) to render him nonexempt.

It appears from the defendant's evidence that the regular, non-supervisory employees worked 48 hours per week. In plaintiff's department they were engaged in assembling and packing parachutes and loading them for shipment, and later in the baling and loading of sleeping bags. Plaintiff testified that during the entire period from July 12, 1943, till September 30, 1944, he spent at least four hours a day at the bench, engaged in doing exactly the same type of work that was being done by the nonex-

---

[1] Sec. 541.1 Executive. The term "employee employed in a bona fide executive * * * capacity" in section 13(a) (1) of the act shall mean any employee—

(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

(B) who customarily and regularly directs the work of other employees therein, and

(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

(D) who customarily and regularly exercises discretionary powers, and

(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities, and

(F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment.

empt employees under his direction. Witness Ricker, a former purchasing agent of the defendant, in behalf of the plaintiff testified that he saw plaintiff doing such work on frequent occasions—almost every day. Witness Porell, plant superintendent, and Rosbury, foreman, in the main, controverted the plaintiff. The evidence showed the former of the two was not in a position to know just what work plaintiff was doing. He testified on cross examination that on one occasion he worked with the plaintiff loading parachutes. Both showed a lack of candor which did not impress the court favorably. Furthermore, as stated above, on October 2, 1944, defendant began paying overtime compensation to plaintiff while he was still performing the same type of work as before, which is consistent with a recognition by defendant that plaintiff was not in fact a bona fide executive under the Act.

I find that plaintiff's hours of work of the same nature as that performed by nonexempt employees exceeded 20 percent of the number of hours worked, in the workweek by the nonexempt employees under his direction, and that plaintiff was not an employee employed in a bona fide executive capacity. Therefore he is entitled to overtime compensation, liquidated damages in an amount equal to the overtime compensation, and attorneys' fees in accordance with Section 216(b) of the Act.

█ Computation of the rate of pay will be according to the rule of Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 579, 62 S.Ct. 1216, 86 L.Ed. 1682. Where the contract is for a set weekly wage but the hours of work are variable or fluctuating the rate of pay for the week is the amount of pay divided by the number of hours actually worked.

█ . No overtime compensation will be allowed for the two weeks vacation period during period (d). Plourde v. Massachusetts Cities Realty Co., D.C., 47 F.Supp. 668, 671. Nor will the three days' illness during period (c) be included in hours worked for the purpose of determining overtime compensation (Keen v. Mid-Continent Petroleum Corp., D.C., 63 F.Supp. 120, 139, 140) though it will be included for the purpose of determining the regular rate of pay of plaintiff for the week involved, since part of his employment contract was to be paid his salary even when absent from work because of sickness. There is no evidence as to exactly when, during period (c), plaintiff was absent, so the three days deducted will be the first three days of the first week of that period. No overtime compensation for hours in excess of eight will be allowed for January 29, 1944 since plaintiff was paid overtime for that date.

When computations are made by the parties in accordance with this opinion and submitted to the court, judgment will be entered for the plaintiff for the unpaid overtime compensation, liquidated damages in an amount equal to the overtime compensation together with an allowance for attorneys' fees and costs.