Harry T. Nusbaum, J.
This action was instituted by the plaintiff to collect overtime wages allegedly due to him pursuant to the provisions of sections 206 and 207 of chapter 8 of title 29 of the United States Code more commonly known as the Fair Labor Standards Act, §§ 6 and 7; (U. S. Code, tit. 29, §§ 206, 207).
In defense thereof the defendant pleads a general denial and, as affirmative defenses, (1) that the plaintiff was employed in an executive and administrative capacity and as such comes within the exemptions set forth in section 13 of the act (U. S. Code, tit. 29, § 213), and (2) that this court lacks jurisdiction of the subject matter of the action.
The question of jurisdiction can be disposed of quickly. This court has jurisdiction to determine the question submitted. Section 16 of the act (U. S. Code, tit. 29, § 216) specifically states ‘ ‘ Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.” Accordingly it has been uniformly held that jurisdiction under the Federal statute lies in both the Federal and the State courts (Emerson v. Mary Lincoln Candies, 174 Misc. 353, affd. 261 App. Div. 879, app. den. 261 App. Div. 1044, affd. 287 N. Y. 577; Majewski v. Johnson Glove Co., 45 N. Y. S. 2d 419; Kerness v. Austin Burke, Inc., 188 So. 2d 879 [Fla.]; Tidewater Optical Co. v. Wittkamp, 179 Va. 545).
*837 The basic question presented is, of course, one of definition. What is an executive, or an executive or administrative employee 1 Section 541.1 of the Regulations and Interpretations of the Code of Federal Regulations, issued under the Fair Labor Standards Act by the United States Department of Labor, defines an executive employee as follows (Code of Fed. Reg., tit. 29, § 541.1):
“ The term ‘ employee employed in a bona fide executive * * * capacity ’ in section 13(a)(1) of the Act shall mean any employee:
“ (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
“ (b) Who customarily and regularly directs the work of two or more other employees therein; and
“ (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
“ (d) Who customarily and regularly exercises discretionary powers; and * * *
‘ ‘ Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and
11 (f) Who is compensated for his services on a salary basis at a rate of not less than $100 per week (or $75 per week if employed in Puerto Rico, the Virgin Islands, or American Samoa) exclusive of board, lodging, or other facilities;
‘ ‘ Provided, That an employee who is compensated on a salary basis at a rate of not less than $150 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.”
Section 541.2 defines an “ administrative employee ” as any employee who, among other things, performs services or non-manual work directly related to management policies and who customarily and regularly exercises discretion and independent judgment and who performs only general supervision work *838 along specialized or technical lines requiring special training, experience, or knowledge.
Section 541.116, entitled “ Trainees, executive,” states “ The exemption is applicable to an employee employed in a bona fide executive capacity and does not include employees training to become executives and not actually performing the duties of an executive.”
The testimony adduced at the hearing establishes that the plaintiff in this matter was hired on May 15,1967, as an executive trainee with a view toward eventually becoming one of the defendant’s supervisors or managers. He was first assigned to the defendant’s place of business at the Uensauken terminal, where he received general instruction and training for a period of approximately 2 weeks and then was assigned to perform what appear to be rather menial tasks on the docks until about September 11,1967. Upon his complaint that he was not receiving sufficient training, he was assigned to the defendant’s place of business in Brooklyn, where he worked for a period of approximately 2 months. The testimony would not indicate that the plaintiff performed any tasks in Brooklyn which could be considered either executive or administrative in character under the definitions promulgated by the Department of Labor.
Upon the plaintiff’s further complaint with respect to his training, he was assigned to the Newark terminal. There, from November 13, 1967, to February 15, 1968, for 3 months, he was employed in the office on a regular 8-hour shift, after which he was assigned to the inbound freight department as supervisor, where he performed general supervisory duties which would appear to come within the definitions of an “ executive employee.” After 2% months on the inbound freight docks in Newark from March 15 to May 31, 1968, he was sent to the defendant’s terminal in Baltimore, where he worked for a period of approximately 3 months until August 29,1968, with the understanding that he was to be made the inbound manager in 6 months when he had learned the area. He resigned when advised that someone else was to be appointed to that position.
The plaintiff kept no records of the hours of his employment nor of the periods during which he was employed at each of the defendant’s terminals, and his testimony of the hours worked by him were estimates based upon recollection. Nevertheless it was conceded by the defendant that all of its so-called supervisory employees worked a 10-hour shift.
There is little doubt that the plaintiff was hired to become • one of the “ management team ” as opposed to those employees who performed manual labor and clerical chores. He was not a *839 member of a union, nor was he required to punch a time card. Nevertheless the work performed by him during the first 9 months of his employment cannot be considered sufficient to qualify him as either an executive or administrative employee under the exemptions set forth in section 13 of the act. During this time there is no evidence that he performed any real supervisory functions or had any authority or discretion on the management level.
The regulations (Code of Fed. Reg., tit. 29, § 541.201) quite clearly state that job titles are insufficient as yardsticks. The fact that the plaintiff during the course of his employment had various titles such as outbound supervisor, inbound supervisor, and assistant supervisor does not free the defendant from compliance with the Fair Labor Standards Act or make the plaintiff an exempt employee under the regulations issued thereunder by the United States Department of Labor. Until he was assigned as a supervisor to the inbound freight docks on the defendant’s terminal in Newark, New Jersey, his service cannot be considered as either executive or administrative in nature (Mitchell v. Branch Motor Express Co., 168 F. Supp. 72; Code of Fed. Reg., tit. 29, §§ 541.205, 541.207). I find and determine, therefore, that the defendant is liable to the plaintiff for 10 hours of overtime each week for the period beginning May 15, 1967, to November 13, 1967, the date of his assignment to the Newark terminal, where he worked a regular 8-hour shift until assigned to supervisory duties.
The question that next requires determination is the amount of the award. Although section 7 of the act states quite clearly and unequivocally that the maximum hours to be worked by any employee during any work week is to be 40 hours and that work in excess of 40 hours per week shall be compensated at a rate not less than 1% times the regular rate at which he is employed, there is a wide difference of opinion between the plaintiff and the defendant as to the manner in which the computation is to be made.
The plaintiff claims that the computation is to be made by dividing the plaintiff’s salary of $125 per week by 40 to determine the hourly rate; to wit, $3.125 per hour, adding to that figure $1.56 (one half of the hourly rate) for a total of $4.68 per hour (the overtime rate) and multiplying that figure by the number of overtime hours worked by the plaintiff.
The defendant, relying upon Overnight Motor Co. v. Missel (316 U. S. 572) and other authority, contends that the hourly rate of pay must be computed by dividing the plaintiff’s salary of $125 per week by 50, the number of hours which he agreed *840 to work when employed, which would make his hourly rate $2.50 per hour, and multiplying one half of that or $1.25 by the number of over time hours worked by the plaintiff.
The weight of authority supports the defendant’s contention. The formula for ascertaining the hourly rate of pay and for computing the overtime wages due under section 7 of the act was established in the case of Overnight Motor Co. v. Missel (supra). This interpretation of the act follows Interpretive Bulletin No. 4 issued on October 21, 1938, revised November 1940, and has been generally followed by the courts (Walling v. Helmerich & Payne, 323 U. S. 37; Tidewater Optical Co. v. Witt-Kamp, 179 Va. 545, supra; and Quest v. George A. Bowman, Inc., 64 N. Y. S. 2d 60). Under these cases, the weekly wage was divided by the hours worked each week to determine the hourly rate, and the defendant’s liability was fixed by multiplying one half of the hourly rate by the total number of overtime hours worked by the plaintiff and then adding an equal amount as liquidated damages. Under the wording of the statute (U. S. Code, tit. 29, § 216) the award of an equal amount as liquidated damages is mandatory and is regarded as compensation and not as a penalty or punishment (Overnight Motor Co. v. Missel, supra). This is so regardless of the good faith of the employer.
As the plaintiff’s salary during the period in question was $125 per week, his hourly rate was $2.50 per hour. Under the formula above set forth, the plaintiff is entitled to judgment against the defendant in the sum of $312.50 ($1.25 times 250 hours overtime) and a like sum of $312.50 as liquidated damages. In addition to the sum stated, counsel fees will be allowed to the plaintiff in the sum of $250 as authorized by the provisions of section 16 of the act.
Judgment may therefore be entered in favor of the plaintiff for $875 with costs and disbursements. In accordance with the cases, no interest is allowed.