10 So.2d 29

### CAMPBELL v. ZAVELO
### 7 Div. 712.

Supreme Court of Alabama.

Oct. 8, 1942.

Rutherford Lapsley, of Anniston, for appellant.

Merrill & Merrill, of Anniston, for appellee.

THOMAS, Justice.

A Federal question is presented by this appeal.

This suit is to recover unpaid minimum wages and unpaid overtime compensation, liquidated damages and attorney's fees, pursuant to Section 16 (b) of the Fair Labor Standards Act of 1938, Public 718, 75th Cong., 52 Stat. 1060, 29 U.S.C.A. § 216 (b), and plaintiff sues for the sum of $1,548.44. The act was approved on June 25, 1938, and became effective on the expiration of 120 days from date of enactment, viz., October 25, 1938.

The complaint is as follows: The plaintiff claims of the defendant Fifteen Hundred Forty-Eight and 44/100 ($1,548.44) Dollars, unpaid minimum wages and unpaid overtime compensation, liquidated damages and reasonable attorney's fees for legal services of attorney for plaintiff in the prosecution of this cause, pursuant to Section 16 (b) of the Fair Labor Standards Act of 1938, Public 718, 75th Con-

gress, 52 Stat. 1060, and hereinafter referred to as "the act."

Plaintiff avers that jurisdiction is conferred on the court by Section 41 (8), 28 U.S.C.A., Judicial Code 24 (8), giving the District Court original jurisdiction "of all suits and proceedings arising under any law regulating commerce," and further avers that jurisdiction is conferred upon the Circuit Court of Calhoun County in the State of Alabama, a court of general jurisdiction, and a court of competent jurisdiction under and by the provisions of Section 16 (b) of the act.

The defendant is a resident of the State and County aforesaid and at all times hereinafter mentioned was engaged in the business of repairing, processing and selling clothing, shoes and other like articles in the City of Anniston, County of Calhoun, State of Alabama, and engaged in the business of producing, processing, repairing such goods and wares· and merchandise and transporting the same in interstate commerce in and from defendant's place of business in Anniston, Alabama; and the said defendant doing business as aforesaid is subject to the jurisdiction of the Circuit Court of Calhoun County, State of Alabama.

Substantially all , of the said goods, wares and merchandise, clothing, shoes and other like articles so produced and made ready for sale at the defendant's said place of business during the times hereinafter mentioned have been and were produced for interstate commerce, and parts thereof have been sold, offered for transportation, transported, shipped and delivered in interstate commerce from defendant's said place of business in Anniston, Alabama, to various points outside of the State of Alabama.

The manufactured products produced and made ready for sale, and transported in interstate commerce, compete with products of similar nature in other states, and defendant in such business competes with producers of similar products in other states.'

It is averred that during the work-weeks in the month of October, 1938, and beginning with the date of October 25, 1938, and including the month of August, 1940, and before the filing of this suit, the defendant had this plaintiff and other employees engaged in the production and processing and repairing in its place of business, as aforesaid, the said articles of clothing, merchandise, shoes and other wearing apparel, as aforesaid, and during such period finished products were produced for interstate commerce and sold for transportation, transported and shipped in interstate commerce from defendant's place of business in the City of Anniston, Alabama, to points indicated outside of the State of Alabama, and admitted by defendant in the answers to interrogatories.

The plaintiff avers that in the conduct of his business and in the production, processing, repairing and making ready for sale and in the transportation of such product, defendant violated the provisions of the Act and the provisions of Sections 6, 7, 15 and 16 of the Act, 52 U.S.Stat. 1060, 29 U.S.C.A. §§ 206, 207, 215, 216; that plaintiff during the entire period of his employment by the defendant as herein stated was engaged and worked in defendant's place of business in Anniston, Alabama, in repairing, processing, and making ready for sale of such articles of merchandise as herein referred to, and exercising the usual and essential functions of employees in such place of business and in the production and processing of such merchandise.

It is further averred in substance that the defendant violated the provisions of said act in that the plaintiff was so employed by the defendant in his place of business during the months of October, 1938, and down to and including the month of August, 1940, in the manner indicated by plaintiff. The averments in the complaint are specific as to time and place.

The pertinent provisions of the act under which this suit is brought are:

"Finding· and declaration of policy.

"Sec. 2. (a) The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce;

and (5) interferes with the orderly and fair marketing of goods in commerce.

"(b) It is hereby declared to be the policy of this Act [sections 201–219 of this title], through the exercise by Congress of its power to regulate commerce among the several States, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power." 29 U.S.C.A. § 202 (a, b).

In Section 3 of the act, 29 U.S.C.A. § 203, are certain definitions as to "person", "commerce", "state", "employer", "employee" and "industry." Subsections (i), (j) and (k) of said section are as follows:

"(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, * * *.

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act [chapter] an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State.

"(k) 'Sale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."

The provisions as to minimum wages and maximum hours are well understood. See Section 6 (a) and (b) and Section 7 (a) to (c), inclusive, of the Act that went into effect on Oct. 25, 1938, Vol. 52, U.S.Stat., p. 1060, et seq., 29 U.S.C.A. §§ 206 (a, b), 207 (a to c.)

This suit is based upon Section 16 (b) of the Act, which is as follows: "Sec. 16 * * * (b) Any employer who violates the provisions of section 6 [206] or section 7 [207] [pp. 1062 and 1063] of this Act [title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

And Section 13 of the Act in its subsection (a), 29 U.S.C.A. § 213 (a), among other things, defines the exemptions provided by this provision: "Sec. 13. (a) The provisions of sections 6 and 7 [sections 206 and 207 of this title] shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator) ; or (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * *."

As to the pleading in this case, we will say that the record shows that the defendant assigns the general demurrer, "For that the said complaint fails to state a cause of action," and the judgment of the court overruling demurrer to the complaint as originally filed.

Upon the filing by the plaintiff of amendment to the complaint, the defendant filed demurrers to the complaint as last amended. These grounds of demurrer present no specific legal questions, other than asserting that the complaint does not contain the specifications incident to recovery under the act. On November 13, 1941, demurrer to the complaint as last amended was overruled.

The plea and answer of the defendant to the complaint as amended in effect is that he is not guilty of the matters and things alleged therein; for further plea and answer to said complaint, defendant says that the allegations of the complaint are untrue; that he has not violated any of the provisions of the Act of Congress known as the Wage and Hour Law, or Fair Labor Standards Act, and has not violated Sections 6, 7, 15 and 16 of said Act.

Evidence was offered by the parties upon the foregoing pleadings and upon conclusion of the testimony, judgment of the court as of the 13th day of November, 1941,

was as follows: "Came the parties by attorneys, and this cause being submitted to the Court, and after due and legal proof being shown to the Court, it is considered by the Court that the issues are in favor of the defendant; and it is ordered and adjudged by the court that the defendant have and recover of the plaintiff his damages in this behalf sustained, together with costs in this behalf expended, for which let execution issue."

It is insisted by appellant that from the foregoing statement of the pleadings, and testing the complaint by the requirements of Sections 6, 7, 11 (c), 15 (a), (b), and 16 (a) and (b), Vol. 52, U.S.Stat., pp. 1062, 1063, 1066, 1068, 1069, 29 U.S.C.A. §§ 206, 207, 211 (c), 215 (a, b), 216 (a, b), the complaint states the cause of action under the Act.

In the transcript appear interrogatories propounded to the defendant, his answers, all material allegations of the complaint, other than proof of hours of work by the defendant week by week, and the hours of overtime for the several annual periods beginning October 25, 1938, and ending August 26, 1940, are admitted by the defendant.

The Third Interrogatory is: "(d) Is it not true that you handled during the years 1938, 1939 and 1940, at Number 32 West 11th Street, a business, handling and dealing in second-hand shoes and product of that kind? Answer Yes.

"Fourth Interrogatory: (a) State whether or not during the years 1938, 1939 and 1940, or *at any time during these years, you shipped out of the State of Alabama, for sale outside the State,* goods, merchandise or material which had been handled or processed or repaired, or stored in your place of business on West Eleventh Street, in Anniston, Alabama? Answer Yes.— [Italics supplied.]

"(b) State to what places outside the State of Alabama, you shipped such material during such time, from the Eleventh Street Store. Answer, New York."

The answer to the fifth interrogatory shows that the plaintiff was employed by the defendant, as alleged in the complaint; and that the defendant paid the plaintiff the wages as alleged during the entire period of employment.

It appears in the record that the plaintiff-appellant Campbell spent his entire time on the work of repairing and processing for use and sale, and where necessary machinery and tools were kept and used in reconditioning the second-hand articles purchased by the defendant from army agencies and after being processed and repaired for shipment out of the state; and plaintiff worked in the rear end of the building on Eleventh Street, in which building Joe Ledman had charge of the retail stock in the front of the store.

If this defendant comes under the provisions of the Act, he was subject to the provisions of Section 11 (c) for violation of which the heavy penalties of fine and imprisonment should be imposed as provided by Sections 15 (a) (5), and Section 16 (a) of the Act. Defendant testifies that he did not comply with the Act, if under the same, and was therefore subject to the penalty. The provisions as to records are as follows: "(c) Every employer subject to any provisions of this Act [sections 201–219 of this title] or of any order issued under this Act [sections 201–219 of this title] shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this Act [sections 201–219 of this title] or the regulations or orders thereunder."

From the testimony of the defendant and his witnesses, it is sought to be shown that the plaintiff was a mere retail employee, though defendant admitted in testimony and in answers to interrogatories that he made shipments in interstate commerce of second-hand shoes and leather goods so processed and repaired. The testimony of the plaintiff was not contradicted by the defendant and was to the effect as indicated in his complaint. It is not necessary to set the same out.

The defendant Zavelo kept no record showing the hours of employment, nor the shipments of material referred to in the preceding testimony of the plaintiff, but plaintiff had had previous experience in employment under other government agencies and he kept a record from week to week, which is offered in evidence, the original of which is attached and certified to this court.

The plaintiff testified that appellee, "Mr. Zavelo, told me when I first went to work that he didn't want me to leave Joe there by himself, or who was in charge there, not to leave them by themselves, to be there the open hours of the shop, not to leave them there alone, which I did. I was there all the days I have charged for in my complaint, and worked for Mr. Zavelo. At that .time, after October 25, 1938, I .kept a record from week to week, I kept my own book; I kept my own time all the way through; there may have been some night that my wife put down something when I went to bed; I couldn't recall even any time that she did that. I kept that book in my possession under my supervision all during those times. I kept my own time. This is the original book, I kept it from week to week as my wages were earned, and this is a correct statement of my wages earned during the months stated there."

The plaintiff further testified of the book in evidence that: "The Wage and Hour went into effect on the tenth month,—on October 25, 1938, I got this book and began using it then; I saw in the paper about the Wage and Hour Law. I knew about it from the newspapers and also from past history and experience."

The defendant-appellee testified: "This man worked for me on Eleventh Street ever since I moved there; I have sold out of that store fifteen thousand dollars worth of goods in the last fifteen years, that was shoes, and a very small amount for retail trade; I testified that I had sold fifteen thousand dollars worth of stuff from that store, shoes and leather goods and other things."

The plaintiff insists that the record contains all necessary data upon which to render a judgment in his favor. It is true that the defendant says that he is within the exception of the act and for such reason he has failed to comply with its terms as to keeping records of persons employed by him and conditions of employment maintained.

Section 11 (c) of the act has been above set out. The difficulties confronting such a defendant, honestly insisting and believing that he is without the terms of the act, were pointed out by Mr. Justice Reed in Overnight Motor Transportation Company, Inc., v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. See also Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706, for jurisdiction of state courts and observations on nature of suits for recovery.

In Kirschbaum v. Walling, Adm'r of Wage & Hour Division, U. S. Dept. of Labor, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, it was held:

"The Fair Labor Standards Act defining employees engaged in commerce or in the production of goods for commerce must be construed in the context of the history of federal absorption of governmental authority over industrial enterprise. Fair Labor Standards Act of 1938, § 3 (j), 29 U.S.C.A. § 203 (j).

"Commerce. * * * The application of the Fair Labor Standards Act is dependent upon the character of the employees' activities, and, to the extent that employees are engaged in commerce or in the production of goods for commerce, the employer is himself so engaged. Fair Labor Standards Act of 1938, §§ 3 (j), 6, 7, 29 U.S.C.A. §§ 203 (j), 206, 207.

"Commerce. * * * The Fair Labor Standards Act covering employees engaged in commerce or in the production of goods for commerce does not require that the employees must themselves participate in the physical process of the making of the goods before they can be regarded as engaged in their 'production.' Fair Labor Standards Act of 1938, §§ 3 (j), 6, 7, 29 U.S.C.A. § 203 (j), 206, 207."

In the last cited case, headnotes from which are quoted above, Mr. Justice Frankfurter said, among other things, that:

"* * * As passed by the House, the bill applied to employers 'engaged in commerce in any industry affecting commerce'. See H. Rep. No. 2182, 75th Cong., 3rd Sess., p. 2; 83 Cong. Rec. 7749–50. * * *

"But the petitioners urge that § 3 (j) cannot be construed literally, that Congress surely did not design the Act to apply to every employee who happens to perform services that are essential to the production of goods for commerce. But because some employees may not be within the Act even though their activities are in an ultimate sense 'necessary' to the production of goods for commerce, it does not follow that no employees whose activities are 'necessary' are entitled to the benefits of the Act. Section 3 (j) cannot thus be read out of the Act. The lower court in No. 924 met the petitioners' argument by finding the Act applicable to these employees because

their work was 'in kind substantially the same as it would be if the manufacturers employed them directly'. In the immediate situation, the answer may be adequate; but as a guiding criterion it may prove too much. 'Necessary' is colored by the context not only of the terms of this legislation but of its implications in the relation between state and national authority. We cannot, in construing the word 'necessary', escape an inquiry into the relationship of the particular employees to the production of goods for commerce. If the work of the employees has only the most 'tenuous relation to, and is not in any fitting sense 'necessary' to, the production, it is immaterial that their activities would be substantially the same if the employees worked directly for the producers of goods for commerce.

"* * * In our judgment, the work of the employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce'. What was said about a related problem is not inapposite here: 'Whatever terminology is used, the criterion is necessarily one of degree and must be so defined. This does not satisfy those who seek for mathematical or rigid formulas. But such formulas are not provided by the great concepts of the Constitution such as "interstate commerce," "due process," "equal protection". In maintaining the balance of the constitutional grants and limitations, it is inevitable that we should define their applications in the gradual process of inclusion and exclusion. There is thus no point in the instant case in a demand for the drawing of a mathematical line. And what is reasonably clear in a particular application is not to be overborne by the simple and familiar dialectic of suggesting doubtful and extreme cases.' Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 467, 58 S.Ct. 656, 660, 82 L.Ed. 954. 'What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation.' Gully v. First Nat. Bank, 299 U.S. 109, 117, 57 S.Ct. 96, 100, 81 L.Ed. 70."

See also Fleming, Adm'r of Wage & Hour Division, U. S. Dept. of Labor, v. A. B. Kirschbaum Co., D.C., 38 F.Supp. 204, affirmed in 3 Cir., 124 F.2d 567; Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

The trial court in rendering judgment on November 13, 1941, did not have the foregoing constructions by the Supreme Court of the United States of the Act of Congress to guide it, and to which we have adverted, as of dates of June 1st and June 8th, 1942.

■ Following the application made of the Act of Congress in the Kirschbaum case, supra, and extending the influence of the statute to the building in which goods of the class are fabricated, towit, to firemen, electricians, elevator operators and watchmen, the statute will be extended also to a repairman or shoemaker in the instant case who reconditions secondhand army leather goods and sends large portions thereof into the avenues of interstate commerce.

■ For the purpose of another trial, we should say, under the holdings of the Supreme Court of the United States, the compensation by way of liquidated damages for failure to pay minimum wages under §§ 6 (a) and 7 (a) of the Act, 29 U.S. C.A. §§ 206 (a), 207 (a), is not a penalty or punishment of the government.—Overnight Motor Transportation Co., Inc., v. Missell, supra. In our opinion interest should not be computed on the double payment for overtime work authorized by the Act of Congress. That is to say, the provisions of the Act of Congress are the limits of liability which can be imposed on an employer. The justice of this holding is dictated by the difficulty of the employer to ascertain whether or not his business is within or without the Act of Congress. The amount sought is not within our statute and decisions providing for interest on failure of payment of contract price.

Since the preparation of the foregoing, the last volume of A.L.R., 139 p. 1404, has come to my desk, containing the citations throughout the country on the subject of jurisdiction, the liberal constructions of the act before us made by various courts in our country, and what employees are within the exception set out in the act, to which we have heretofore adverted. See annotations in Duke v. Helena—Glendale Ferry Co., 203 Ark. 865, 159 S.W.2d 74, 139 A.L.R. p. 1404 et seq; Serio v. Dee Cigar & Candy Company, Inc., Ala.Sup.,

9 So.2d 909;[1] Acme Lumber Co., Inc., v. Shaw, Ala.Sup., 10 So.2d 285.[2] The last two cases have just been considered by the other division of our court and are pertinent to the instant decision.

The judgment of the circuit court is reversed and the cause is remanded for ascertainment of the several amounts for which plaintiff has made claim under the Act of Congress.

Reversed and remanded.

GARDNER, C. J., BOULDIN and FOSTER, JJ., concur.

