9 So.2d 909

**SERIO v. DEE CIGAR & CANDY CO., Inc.**

**6 Div. 988.**

Supreme Court of Alabama.

Oct. 8, 1942.

Rosenthal & Rosenthal, of Birmingham, for appellee.

Warner W. Gardner, Sol., and Mortimer. B. Wolf, Asst. Sol., both of Washington, D. C., and Jerome A. Cooper, Regional Atty., and Henry J. Mayfield, Asst. Atty., both of Birmingham, for Administrator of Wage and Hour Division, U. S. Department of Labor, amicus curiae.

BOULDIN, Justice.

Action by an employee against his employer to recover overtime compensation, liquidated damages, and attorney's fees claimed to be due under the "Fair Labor Standards Act of 1938." 52 Stat. 1060, 29 U.S.C.A. §§ 201 to 219.

These sections correspond with sections 1 to 19 of the original act.

The real issue before us is: Was the plaintiff an employee "engaged in commerce or in the production of goods for commerce," entitled to the benefits of the wages and hours provisions of sections 6 and 7? If so, he had a cause of action under section 16(b), upon proof of overtime employment, without overtime pay. "Commerce," for the purposes of this case, admittedly means "interstate" commerce. So defined in § 3(b). The defendant company, the employer, was a wholesale dealer in tobacco products and candies; had its place of business, stock of goods, and working force in Ensley, Alabama. Its sales were made solely to retail dealers in Alabama.

Its stock of goods was obtained in the main, from sources outside the state; were purchased, transported and delivered to its store in interstate commerce. They were purchased outright on standing orders, special orders in case of extra demand, and occasionally from traveling salesmen. There were no orders delivered direct to customers, nor special orders on behalf of particular customers, merely passing through the store from manufacturer to retailer in one continuous transaction in interstate commerce. The goods became a part of an Alabama wholesaler's stock, sold and delivered to Alabama retailers by other and distinct transactions from those with nonresident manufacturers.

As touching the nature of employment, the employee states his case thus: "I was employed as inside stock clerk, and watchman assistant bookkeeper and helper on a truck. My duties as inside stock clerk and watchman and as assistant bookkeeper were performed in the store of Dee Cigar and Candy Co. Inc. at 2111 Avenue D. in the City of Ensley, Alabama. The truck on which I was a helper was operated exclusively in Jefferson County, Alabama. It never at any time, when I was working on said truck in the capacity of the helper, made any trips outside of the state."

He further shows his duties, as stock boy, were helping unload the cases of goods after they were brought into the warehouse, removing cigars from the cases, putting on the shelves with other stock, removing cigarettes from cases, stacking them so that girls could attach state tax stamps, later placing them in stock, and keeping the stock in order.

That his work, as watchman, was to see that stock was not stolen, &c. As assistant bookkeeper, or ledger clerk, "I kept the books and helped keep the hours for the employees." As helper on a salesman's truck, the trial court, on considering the evidence, held the employment was that of an independent contractor. For our purposes, it is sufficient to say it was in course of making sales, and delivering goods sold to retailers all in the State of Alabama. It does not appear that plaintiff was engaged in the purchasing end of the business.

Throughout the Fair Labor Standards Act, and the history of its enactment, it is evident the coverage of the act was worded with great care.

Section 6(a) reads: "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates."

Like wording appears in § 7, providing for overtime compensation.

Congress considered and definitely declined to include employees engaged in work "affecting interstate commerce."

In no sense was this employee engaged in the "production of goods for [interstate] commerce."

This clause may be looked to, however, as a limitation to one defined class of employees, not literally and immediately engaged in interstate commerce.

The constitutionality of the act, and special features thereof, were upheld in United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 455, 85 L.Ed. 609, 132 A.L.R. 1430.

The court took note of the difference between employment "in (interstate) commerce," and employment "in the production of goods for (interstate) commerce," and held both were within the power to regulate commerce between the States, vested in Congress by the Constitution.

Stress was laid on the evils growing out of the presence in the channels of interstate commerce, of goods produced by substandard wages of employees. We quote:

"As we have said the evils aimed at by the Act are the spread of substandard labor conditions through the use of the facilities of interstate commerce for competition by the goods so produced with those produced under the prescribed or better labor conditions; and the consequent dislocation of the commerce itself caused by the impairment or destruction of local businesses by competition made effective through interstate commerce. The Act is thus directed at the suppression of a method or kind of competition in interstate commerce which it has in effect condemned as 'unfair.'"

This holding is directed to the question of the power of Congress to enact such legislation under the interstate commerce clause of the Constitution. It should not be construed to minimize the welfare of workers as a plain objective; but to extend its benefits to those employees specified in the act under the authority of the commerce clause, and in keeping with a sound policy, having in mind maintenance of a just balance between State and Federal sovereignties according to the genius of our institutions. Kirschbaum v. Walling, Administrator, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. In this case it is pointed out that production of goods at a local plant is not interstate commerce; but where the work of employees had such close immediate tie with the process of production for interstate commerce, as to become an essential part of it, such employees become beneficiaries under the act.

While stressing the power of Congress and the need for such legislation on behalf of each employee engaged in the production of goods for interstate commerce, the act is entirely silent as to employees engaged in the distribution of goods which have ceased to move in the channels of interstate commerce, have acquired a situs within the state, subject to the regulatory and taxing powers of the state, and are being distributed wholly within such state. The Congress, so far as appears, did not deem the exigencies, calling for wage and hour legislation on behalf of employees engaged in producing goods for interstate commerce, were imminent in the distribution of goods as here involved. The act recognizes throughout that some employees of the same employer may be engaged in interstate commerce, while others are not. We intimate no views as to the power of Congress to bring employees of this class within the coverage of the act. So, the problem is reduced to the inquiry: Was this plaintiff an employee "engaged in (interstate) commerce"?

The answer must be no. 11 Am.Jur. p. 70, § 74. What we have written is supported by the great weight of authority, State and Federal, dealing with this statute. We cite cases, without review in detail. Brown v. Bailey et al., October 26, 1940, 177 Tenn. 185, 147 S.W.2d 105; Jewel Tea Co. v. Williams, 10 Cir., March 1941, 118 F.2d 202; Gerdert et al. v. Certified Poultry & Egg Co., Inc., D.C., 38 F. Supp. 964; Rogers v. Glazer, D.C., 32 F. Supp. 990; Abadie v. Cudahy Packing Co. of Louisiana, D.C., 37 F.Supp. 164; Fleming Adm'r v. A. H. Belo Corp., 5 Cir., June 27, 1941, 121 F.2d 207; Abadie v. Cudahy Packing Co. of Louisiana, D.C.E.D.La., 37 F.Supp. 164, decided March 3, 1941; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172; Eddings v. Southern Dairies, D.C., 42 F. Supp. 664.

Affirmed.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.