WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. L. J. MUELLER FURNACE CO.

No. 724.

District Court, E. D. Wisconsin.

July 10, 1943.

B. J. Husting, U. S. Atty., of Milwaukee, Wis., and Victor M. Harding, Jr., and Joseph D. Donahue of the Wage and Hour Division of the Department of Labor, both of Chicago, Ill., for plaintiff.

Lines, Spooner & Quarles and Leo Mann and Irving T. Babb, all of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

This case involves the application of the overtime section of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The issues are (1) whether, pursuant to Section 7(a) of said act, the salaried clerks and watchmen of the L. J. Mueller Furnace Company have received one and one-half times their regular rate of pay for hours worked in excess of 44, 42, and 40 hours per week respectively since October 24, 1938, and (2) in the event there has been a violation of the overtime provisions of the act, whether an injunction should now issue.

Shortly after the effective date of the act, company officials circulated a "notice" among the salaried employees, stating that it would be the policy of the company to pay them the same salaries and to have them work the same number of hours as before, but that for the purposes of the Wage and Hour Law, it was to be understood that the salary received would constitute a basic rate for the first $42\frac{1}{4}$ hours, and one and one-half times that basic rate for the hours worked in excess of $42\frac{1}{4}$ hours. This notice was signed by the salaried employees in October of 1938 and a similar one was signed in October of 1939. In October, 1940, a like notice was posted but was not signed.

No specific hourly rate was designated in the contracts with the salaried employees. The payroll record had a space for the entry of the hourly rate, but none was inserted therein. The arrangement of paying the previous salary remained in effect until February 23, 1942. Up to that time no factory clerk had received any compensation in excess of his or her regular salary, though the office boys occasionally received additional sums in order to prevent salary payments less than the minimum provided by the act.

A determination must be made whether the facts in this case bring it within the ruling of the Supreme Court in Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, or whether the principles laid down in Overnight Motor Transportation Co., Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, govern the situation. In the Belo case the contract specified a basic hourly rate. Here no such rate was stated. Referring to the Missel case, the Court of Appeals for the Seventh Circuit said in Walling v. Stone, 131 F.2d 461, 462: " * * * The Supreme Court held that the contract did not comply with the requirements of § 7 of the Act and pointed out that two elements are essential

562

in a contract of employment in order to comply with the Act: (1) Either a stated hourly rate for regular work, or an upper limit on the total number of hours to be worked for a fixed salary, and (2) an express provision that overtime should be paid for at time and one-half the regular rate. 'If the first element is absent from a contract, the hours worked might require minimum compensation greater than the fixed wage; if the second is absent, overtime work could be paid for at any rate equal to or greater than the regular rate. Thus, neither of these elements alone is sufficient for compliance with the law—both must be present. In the case at bar both are absent."

The second requirement that overtime be compensated at one and one-half times the regular rate is present in the contracts which are under consideration, but the first requirement of a stated hourly rate for regular work or an upper limit on the total number of hours to be worked for a fixed salary is absent.

Defendant concedes that the clerks' contracts did not provide for a stated hourly rate for regular work, but contends that they contained a formula by which such a rate could be ascertained and that such a formula makes the contracts sufficient and valid.

The defendant here apparently assumed that the act did not require more than the payment of the minimum wage stated in the act, and one and one-half times that minimum wage for overtime. That is the way their plan worked out, as such employees did not in fact receive overtime compensation until after the plan was abandoned in 1942. The Supreme Court in the Missel case said (316 U.S. at page 577, 62 S.Ct. at page 1220, 86 L.Ed. 1682): " * * * The provision of section 7(a) requiring this extra pay for overtime is clear and unambiguous. It calls for 150% of the regular, not the minimum, wage. * * *" and (316 U.S. at page 578, 62 S.Ct. at page 1220, 86 L.Ed. 1682): " * * * We conclude that the act was designed to require payment for overtime at time and a half the regular pay, where that pay is above the minimum, as well as where the regular pay is at the minimum."

■ I conclude that the contracts in question as to the salaried employees fall within the rule of the Missel case, and were not valid.

The watchmen contracts affect only a small number of employees. There were three watchmen in 1938 and there are ten at the present time. The watchmen contracts did specify a basic hourly rate of 25¢ per hour and 37½¢ as overtime. It guaranteed that the weekly wages would be the same as previously paid.

On the face of it the watchmen contracts appear to come within the rule of the Belo case. However, that was a five to four decision and its doctrine should not be extended beyond the facts in that case. The Circuit Court of Appeals (Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207, 210) had found that the contracts were "actual bona fide contracts of employment" and that "they were intended to, and did, really fix the regular rates at which each employee was employed." The Supreme Court gave emphasis to this conclusion. 316 U.S. 624, 629, 62 S.Ct. 1223, 86 L.Ed. 1716.

The hourly wage rate of defendant's watchmen was 57¢ to 60¢ per hour. The contract rate was 25¢ (later 30¢ per hour). It is very evident that 25¢ an hour was not intended or understood to be the "regular rate" of pay for employees who had been earning 57¢ to 60¢ per hour. To give effect to such an agreement would defeat the purpose of the act. Such a contract must be condemned. Overtime pay for watchmen did not in fact commence until December 21, 1942. The statement of the court in Scott v. Atlas Press Co., D.C., 49 F.Supp. 260, 262, is applicable: " * * * In other words, the so-called 'regular rate' was fictitious and irregular and, as previously indicated herein, it varied with the hours of labor to which it was applied, with the result of substantially defeating the purpose of the act providing for time and a half for overtime. The agreement tends to defeat one of the fundamental objects of the act which was to spread employment. The necessary result of the agreement, in practice, was that no substantial amount was, in fact, paid for overtime."

■ I conclude, therefore, that the watchmen's contracts are likewise condemned by the doctrine laid down in the Missel case.

■ Guided by the principles announced by this court in Walling v. Builders' Veneer & Woodwork Co., D.C., 45 F.Supp. 808, I conclude that an injunction should issue. See, also, Fleming v. Tidewater Optical Co., D.C., 35 F.Supp. 1015, 1017.