15 So.2d 720

**CUDAHY PACKING CO. OF ALABAMA v. BAZANOS.**

3 Div. 375.

Supreme Court of Alabama.

Nov. 4, 1943.

Rehearing Denied.Dec. 16, 1943.

Ball & Ball, of Montgomery, for appellant.

Hill, Hill, Whiting & Rives, of Montgomery, for appellee.

STAKELY, Justice.

This is a suit brought by George A. Bazanos against his former employer, the Cudahy Packing Company of Alabama, under the provisions of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., to recover alleged unpaid overtime compensation, an additional equal amount as liquidated damages, plus attorney's fee and costs. There was a verdict by the jury for which judgment was rendered by the court on October 17, 1942. Thereafter on motion by the plaintiff, the court rendered judgment for the plaintiff against the defendant for attorney's fees, which was added to the original judgment. This appeal is from this judgment.

The questions for decision are whether or not the appellant and appellee were engaged in interstate commerce within the meaning of the Fair Labor Standards Act and, if so, whether or not the recovery for overtime compensation was properly computed and whether or not the allowance for attorney's fees was properly made.

Pertinent provisions of the Fair Labor Standards Act, set out in U.S.C.A., Title 29, are as follows:

"§ 203 (b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

"§ 207 (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date,

"unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

\* \* \* \* \* \*

"(d) This section shall take effect upon the expiration of one hundred and twenty days from the date of enactment of sections 201–219 of this title. June 25, 1938, c. 676, § 7, 52 Stat. 1063, as amended Oct. 29, 1941, c. 461, 55 Stat. 756."

The date of enactment of the Act was June 25, 1938. There is no dispute between the parties that the Act took effect October 24, 1938, and that if the Act is applicable, time and a half should have been paid for overtime for all hours worked over forty-four for each week from October 24, 1938, to October 24, 1939, and for all over forty-two hours per work week from October 24, 1939, to February 2, 1940.

Pertinent also is the section of the Fair Labor Standards Act as shown in U.S.C.A. Title 29, which provides for the civil liability of the employer to his employees, as follows: "§ 216 (b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or rep-

resentative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. June 25, 1938, c. 676, § 16, 52 Stat. 1069.''

The case was submitted to the jury only on Count 3 of the complaint, which will be set out by the reporter. Demurrers raising the point that the allegations of Count 3 do not state a cause of action under the Fair Labor Standards Act were overruled. Appellant assigns this ruling as error.

The allegations of Count 3 clearly show that appellant, the employer, was engaged in interstate commerce. But that is not sufficient. It is not the nature of the employer's business which determines the right of an employee to receive the benefits of the Fair Labor Standards Act. It is the character of the services performed by the particular employee which must be considered. It is the work of the employee which is decisive. Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395 (affirmed as modified in Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460) ; McLeod v. Threlkeld et al., 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, decided June 7, 1943, by the Supreme Court of the United States.

There are general allegations in the count describing the nature of the work of appellee and there are also specific allegations describing such work. We shall be guided by a consideration of the specific allegations because if there is any conflict between the two, we think the specific allegations would control. Louisville & N. R. Co. v. National Park Bank of New York, 188 Ala. 109, 65 So. 1003; Dwight Mfg. Co. v. Holmes, 198 Ala. 590, 73 So. 933.

Analysis of the specific allegations of Count 3 show: (1) that the plaintiff was a clerical employee of the defendant; (2) that after merchandise which was shipped to the defendant, largely from points without the State, had been received by the defendant and a record made thereof (it is not alleged that plaintiff made this record) the plaintiff would check the invoice which the defendant received from the shipper against the record made of merchandise when received to ascertain if any of the merchandise was damaged or missing; (3) that if after comparing the invoice with the unloading records it appeared that any of such merchandise was damaged, plaintiff would so report to the home office; (4) that plaintiff posted the individual items so received in the stock record book; (5) that he prepared and mailed tonnage reports; (6) that plaintiff made up inventory reports of merchandise on hand; (7) that a large part of the merchandise which was received by the defendant and which was checked by plaintiff, was thereafter reshipped by the defendant into other states, but we do not construe the pleading to show that plaintiff had any connection with merchandise shipped out of the state except as his work above described was incidentally connected therewith.

In reaching a proper construction of the Fair Labor Standards Act, we are obviously governed by the decisions of the Supreme Court of the United States. That court has recognized the difficulty in applying the general terms of the Act to the infinite variety of complicated industrial situations. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1648. It has been clearly determined, however, that the Act does not extend to businesses or transactions which merely affect commerce. Its application is limited to employees "engaged in commerce or in the production of goods for commerce." Kirschbaum v. Walling, supra; Walling v. Jacksonville Paper Co., supra; Serio v. Dee Cigar & Candy Co., 243 Ala. 306, 9 So.2d 909.

The plaintiff was certainly not "engaged * * * in the production of goods for commerce." Was he "engaged in commerce"? We think so. In the case of Fleming v. Jacksonville Paper Co., supra [128 F.2d 397], the Circuit Court of Appeals for the Fifth Circuit said:

"The question must be whether the work of the particular employee for the time in question is in commerce or in the production of goods for commerce. His whole time and work need not be thus in commerce, because the Act does not make any distinction of that sort. If a substantial part of his work is in commerce or in producing goods for commerce, he must be dealt with according to the Act. And 'commerce' must not be limited to 'transportation'. Section 3, 29 U.S.C.A. § 203, which is the dictionary of the Act, declares that 'Commerce means trade, commerce, transportation, transmission, or communication' interstate. Transportation is only a part of it. Trade is another part, and

according to the old maxim, it takes two to make a trade. Importer as well as exporter, buyer as well as seller, is a participant; and ordering and paying for goods are included. If across State lines all those engaged in such work are in commerce. * * *

"Those who work either at selling or delivering across State lines, or at buying and receiving across State lines, are employed in commerce, whether they write the letters, keep the books, or load and unload or drive the trucks. As we understand the record, some of this is done at every warehouse. The unloading at destination of an interstate shipment is work in interstate transportation, whether done by the carrier or another."

The Supreme Court of the United States affirmed this decision of the Circuit Court of Appeals with certain modifications, which are not here applicable, and in doing so said: "We merely hold that the decision of the Circuit Court of Appeals as construed and modified by this opinion states the correct view of the law." Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 337, 87 L.Ed. 460.

■ We understand the affirmance to mean that an employee is entitled to the benefits of the Act even though his duties are not directly a part of transportation, since transportation is only a part of commerce. It further means that a clerical worker, such as the plaintiff, is subject to the provisions of the Act.

The decision of this court in Serio v. Dee Cigar & Candy Co., supra, is not in conflict with the holding in the case at bar. In that case the acts in which the employee was engaged were solely in connection with the local or intrastate phases of a wholesale business.

Nor is the holding in the present case at variance with the recent decision on June 7, 1943, of the Supreme Court of the United States in the case of McLeod v. Threlkeld et al. In the latter case the employee was a cook working for persons who had a contract to furnish meals to maintenance-of-way employees of a railroad, an interstate carrier. The court held that the Fair Labor Standards Act did not apply.

■ According to this decision the test is whether the activities of the employee are actually in or so closely related to the movement of commerce as to be a part of it. Applying this test to the case at bar, we think that "movement in commerce"

can well include among its final phases the clerical work of checking and reporting for goods lost or damaged in transit between the states and the entries in the stock book of goods received in the interstate shipments.

The court was not in error in overruling the demurrer to Count 3.

■ Demurrers were sustained to defendant's pleas 5, 6, 7, 9 and 10, presenting the defense of accord and satisfaction or release, and to plea 11 to the effect that the plaintiff was employed to do nothing but clerical work. Appellant insists that the trial court erred in so doing. We do not agree with this insistence. A release of claims is no defense to an action under the Fair Labor Standards Act. Fleming v. Warshawsky & Co., 7 Cir., 123 F.2d 622, 626; United States ex rel. Johnson v. Morley Const. Co. et al., 2 Cir., 98 F.2d 781, 789; Travis v. Ray, D.C., 41 F.Supp. 6, 8; Hutchinson v. William C. Barry, D.C., 44 F.Supp. 829. In the case last cited it was held that a motion to strike that part of the answer which set up as a defense that the plaintiff gave the defendant a release of "all and any claims now or hereafter pertaining to my employment" should be granted. It was there said: "The act constitutes a declaration of public policy against sub-standard labor conditions. This policy would be defeated if the validity of contracts such as this were to be upheld. It is obvious that desire to continue in employment on the part of the laborer would make it easy for an employer who wished to ignore the act's provisions to induce him to execute a release of claims under the provisions of the act. Unless such agreements as this be declared void, it would therefore be easy to circumvent the declared purpose of Congress."

As far as plea 11 is concerned, clerical employees engaged in interstate commerce may be within the protection of the Fair Labor Standards Act. Fleming v. Jacksonville Paper Co., as modified by Walling v. Jacksonville Paper Co., supra; Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682.

■ Appellant further insists that the method of computing damages was not proper. It is insisted that the only contract in evidence is that of March 6, 1936, with Cudahy Packing Company which provided for a salary of $25 per week and that the computation should have been made on the basis of this contract. This contract

was made at Miami, Florida, and not with this defendant.

However, we think the undisputed evidence shows that when the plaintiff came to Montgomery in June, 1938, and went to work for the defendant, a different corporation, the plaintiff and defendant made a contract on a basis of $30 a week, with the understanding that plaintiff would work six days a week from eight o'clock to six o'clock, with one hour off for lunch, except that on Saturday the hours were from eight o'clock to one o'clock. We think that proof of this agreement was supported without contradiction not only by the testimony of the plaintiff, but also by the testimony of witnesses for the defendant.

The contract was therefore for a fifty-hour work week at $30 per week. As pointed out above, there was no dispute as to the number of hours worked.

The formula given by the court to the jury for computation for overtime was that "under the contract the wage scale is $30, divided by 50, that is 60 cents an hour and if the plaintiff worked overtime, he would be entitled to time and a half, or 90 cents an hour for overtime."

The Supreme Court of the United States in the case of Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682, 1689, said:

"No problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly wage for regular contract hours which are the actual hours worked,[16] to similar computations for employees on hourly rates. Where the employment contract is for a weekly wage with variable or fluctuating hours the same method of computation produces the regular rate of each week.

"Footnote 16. Wage divided by hours equals regular rate. Time and a half regular rate for hours employed beyond statutory maximum equals compensation for overtime hours."

In the case of Warren-Bradshaw Drilling Co. v. Hall, 124 F.2d 42, 44, the Circuit Court of Appeals, Fifth Circuit, said:

"What the statute in effect provides, and what this court has held, is: That overtime must be compensated for at one and one-half times the regular rate at which the wage earner is employed; that that rate may be fixed by agreement; and that if there is no agreement fixing the amount to be paid for regular and overtime work, the regular rate, as to it, may properly be determined by dividing the total pay each week by the total hours worked."

See, also, Bumpus v. Continental Baking Co., 124 F.2d 549, 552, 140 A.L.R. 1258, where the Circuit Court of Appeals, Sixth Circuit, said: "We conclude that the appellant is entitled to receive overtime payments based on the regular rate at which he was employed. * * *."

Since the contract was on a weekly salary basis of $30 and called for a regular number of hours, fifty, the regular rate of employment contemplated by the Act was sixty cents per hour, as charged by the court.

It is further claimed that only a negligible part of appellant's business was interstate. But the proof showed that 70 per cent to 80 per cent of the goods, which the plaintiff checked, came from Kansas City, Missouri, and other points outside Alabama.

In the case of Fleming v. Jacksonville Paper Co., supra, the court said: "The percentage of the employer's business intrastate as compared with that interstate proves little."

The court was not in error in making its various rulings on the method of computation.

█ Finally it is argued by the appellant that attorney's fees were improperly allowed. The language of the statute is that "the *court* in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (Italics ours.) We know of no reason why the statute cannot be construed to mean exactly what it says, which is another way of saying that the procedure was proper. After the award for overtime together with an equal amount in damages had been made, it was within the province of the court to determine the matter of attorney's fees. See W. W. Montague & Co. v. Lowry, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608.

This holding is not intended to be contrary to the decision of this court in Acme Lumber Co. v. Shaw, 243 Ala. 421, 10 So. 2d 285. The trial judge has the discretion either to submit the determination of the fee to the jury or fix the fee himself. That case discloses that final responsibility as to the amount of the attorney's fee is with the court, a jury's verdict is advisory and the amount of the fee should be found by the jury as a separate item.

80

Nor can it be inferred that the verdict of the jury included an allowance for attorney's fees. There is no contention by the appellant but that the proof showed overtime worked by the plaintiff of at least 806 hours. 806 hours at ninety cents per hour is $725.40. The addition of an equal amount aggregates $1,450.80, the amount of the jury's verdict. In addition to this, the court in its oral charge to the jury did not include attorney's fees in its enumeration of the items which might be recovered.

We are unable to say that the conclusion of the trial court, which had the matter before it, as to the amount of the fee, was in error. Nor are we impressed with the idea that the appellant was deprived of the constitutional right of trial by jury on the hearing of the motion to allow attorney's fees. The theory is that the determination of the attorney's fee is a money judgment and hence contrary to the Seventh Amendment of the Constitution of the United States, which provides that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved," and is also contrary to the Constitution of Alabama, Section 11, which provides "that the right of trial by jury shall remain inviolate."

The proceeding to fix an attorney's fee on a hearing before the court is not a suit at common law or in the nature of such a suit. The proceeding is one unknown to the common law. It is a statutory proceeding. Payment of the attorney's fee is imposed for violation of the statute and the petition to the court is a remedy appropriate to its enforcement. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; In re One Chevrolet Automobile, Senior v. State, 205 Ala. 337, 87 So. 592.

We think that this opinion sufficiently covers the various assignments of error, whether based on rulings on the pleadings, exceptions to the oral charge of the court, refused charges, the action of the court in overruling the motion for a new trial, or in fixing the attorney's fee. There being no errors, the judgment of the lower court is affirmed.

Affirmed.

. GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.