### GARCHELL v. KANTAR.
### Civil Action No. 911.

District Court, D. Minnesota,
Fourth Division.

July 28, 1944.

Arthur T. Nelson and F. Gordon Wright, both of Minneapolis, Minn., for plaintiff, in opposition to the motion.

Samuel Dolf and M. E. Culhane, both of Minneapolis, Minn., for the defendant, in support of the motion.

BELL, District Judge.

This is an action under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to recover compensation for overtime work performed between the dates of October 26, 1940 and February 20, 1942, a period of approximately sixty-seven weeks. A jury was waived and the case tried before the court. Findings of fact and conclusions of law were made and a judgment ordered for the plaintiff.

The defendant has presented appropriate motions for an order vacating the findings and judgment in favor of the plaintiff and for findings and judgment in favor of the defendant; or, in the alternative, an order for a new trial.

The testimony in this case is conflicting; many statements by both parties cannot be accepted as true; some of them clearly are false. However, the facts safely can be determined from records, admissions and the testimony as a whole. Indeed, it is not difficult in this case to ascertain the truth.

The plaintiff is a resident of Minneapolis, Minnesota, a meat cutter by trade and was employed by the defendant almost continuously from 1926 to February 20, 1942.

The defendant is and for many years has been engaged in the sale and distribution of meats, at wholesale and retail, with his principal place of business in Minneapolis. His sales, largely to hotels, restaurants and to the Minneapolis, St. Paul and Sault Ste. Marie Railway Company commissary, amounted approximately to $90,000 in 1940, $250,000 in 1941, and $350,000 in 1942. The defendant generally employed from six to ten men in his business.

During the period here involved, the defendant purchased a substantial part of the meats used in his business from packing companies located in states other than Minnesota, such meats being shipped in interstate commerce to the state of Minnesota and delivered by the packing companies to the defendant at his place of business in Minneapolis and immediately, or within a few days, delivered by the defendant to his customers. Such meats were in commerce until delivered by the defendant to his customers. Occasional sales were made by the defendant to persons without the state of Minnesota. During said period the defendant was engaged in interstate commerce and was subject to the provisions of the Fair Labor Standards Act. In my opinion this case comes within the principles of Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395, affirmed Walling v. Jacksonville Paper Company, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468, and Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331; Cudahy Packing Co. v. Bazanos, 245 Ala. 73, 15 So.2d 720.

The plaintiff was required by the defendant to be at his place of business in Minneapolis daily from 6:30 a.m. to 5:30 p.m. It was the duty of the plaintiff to receive, check-in and place in coolers meats delivered during the early morning hours to the defendant by the packing companies and this work required about three hours daily. After the meats had been received, it was the duty of the plaintiff to enter the cooler and cut and prepare the meats for distribution to the defendant's customers, and this work required several hours daily.

The balance of the time the plaintiff was required to assist in loading meats on delivery wagons of the defendant for delivery to customers. The plaintiff during said period was employed in interstate commerce within the provisions of the Fair Labor Standards Act and the authorities above cited.

The defendant alleged eight counterclaims against the plaintiff on promissory notes and for cash advanced between January 15, 1938, and December 4, 1941. It appears that the plaintiff was in debt to the defendant during the greater part of his term of employment and that deductions were made weekly from his wages to apply on the indebtedness. The plaintiff kept no reliable books or records of his account. The defendant kept books and employed a bookkeeper. His books showed the account of the plaintiff through many years. The plaintiff's indebtedness according to the books was fully paid on April 30, 1940, again on October 26, 1940, and again on February 14, 1941.

■ The Wage Hour Division of the Department of Labor on investigation of the wage situation in connection with the defendant's business determined that, for a period of several months prior to October 26, 1940, the defendant owed the plaintiff unpaid wages for overtime in the sum of $373.45. The defendant paid this sum to the plaintiff by check dated February 14, 1941. On the day this check was cashed, the defendant invited the plaintiff to lunch, accompanied him to the bank where the check was cashed, then returned with him to the defendant's place of business, whereupon the defendant demanded the money the plaintiff had received on the check. The plaintiff gave the defendant $273.45 but retained the balance of $100. The defendant prepared a 6% note, payable on demand, for the $100 and required the plaintiff to sign and deliver it to him. The plaintiff testified that he did not owe the defendant anything at the time, and that he gave the defendant $273.45 out of the proceeds of the check and signed the note for $100 "because he was afraid he would lose his job." The testimony of the plaintiff plus the defendant's own books with the testimony of his bookkeeper fully sustain a conclusion that the plaintiff was not indebted to the defendant on February 14, 1941. The defendant is not entitled to recover on his counterclaims. The note of $100, made the basis of the sixth counterclaim, was wholly without consideration.

No claim is being made by the plaintiff in this case for the return of the $273.45.

The plaintiff's basic wage for nearly ten years had been $40 per week. For twenty-three weeks prior to April 20, 1941, the defendant entered in his time record in a column designated "regular time pay" of the plaintiff $40 per week for each week with no entry in the column designated "overtime pay." After the defendant's experience with the Wage Hour Division twenty-three alterations were made in the book, one for each week from November 2, 1940, to April 26, 1941, by writing "28" over the former entry of "40." An entry of $12 was then inserted in each instance in the overtime pay column. The record then showed a basic wage of $28 per week and $12 per week overtime pay. The net result was the same long hours of work for the plaintiff at the same original rate of pay per week without time and a half for time worked in excess of forty hours per week. The record after April 26, 1941, showed regular time pay of $28 and overtime pay of $12 per week.

■ The defendant explained that the change in bookkeeping was in accordance with the instructions of the Wage Hour Division. It was incumbent on the defendant to prove the reason for the alterations in his books and the change in his system of bookkeeping. The explanation given by him under the circumstances was not sufficient. The defendant should have produced the testimony of any examiner or agent of the Wage Hour Division who gave such instructions, but he failed to do so. Therefore, it is proper to assume that the testimony would have been adverse to the defendant and that no one connected with the Wage Hour Division suggested such a change.

Section 6 of the Fair Labor Standards Act, 29 U.S.C.A. § 206, provides that every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at specified hourly rates.

Section 7, 29 U.S.C.A. § 207, of the act provides that no employer shall, except as otherwise provided in the act, employ persons who are engaged in commerce or in the production of goods for commerce for a work week longer than a specified number of hours unless such employee receives compensation for his employment in excess of the hours specified at a rate not less than one and one-half times the "regular rate" at which he is employed.

■ These sections of the act, by the weight of authority, are held to require payment for overtime at time and a half the regular pay where the pay is above the minimum as well as where the regular pay is at the minimum. Overnight Motor Transportation Co., Inc., v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Carleton Screw Products Co. v. Fleming, 8 Cir., 126 F.2d 537, certiorari denied 317 U.S. 634, 63 S.Ct. 54, 87 L.Ed. 511; Bumpus v. Continental Baking Co., 6 Cir., 124 F.2d 549, 140 A.L.R. 1258; Walling v. Green Head Bit & Supply Co., 10 Cir., 138 F.2d 453; Walling v. Stone et al., 7 Cir., 131 F.2d 461; Walling v. L. J. Mueller Furnace Co., D.C., 50 F.Supp. 561; Scott v. Atlas Press Co., D.C., 49 F.Supp. 260; Fleming v. Knox, D.C., 42 F.Supp. 948. Furthermore, these authorities make it clear that there must be no evasion of the law by agreement between employer and employee, or by a system of bookkeeping, designed for that purpose.

Defendant's Exhibit A is worthy of consideration. It follows:

Exhibit A

"Minneapolis, Minn.,
"February 13, 1941.

"Mr. Morris Kantar,
"Kantar Provision Co.,
"Minneapolis, Minn.

"Dear Sir:

"This will acknowledge receipt of your check for $373.45 in full settlement of all claims against you.

"Please apply this amount as a partial credit for advances you made to me as evidenced by notes.

"It affords me pleasure to be able to partially liquidate my obligation to you.

"Yours very truly,
"/s/ James Garchell"

This document was prepared by the defendant and bears the signature of the plaintiff. It acknowledges receipt of the $373.45, the proceeds of the check. It directs that the sum be applied as a "partial credit for advances you made to me as evidenced by notes." The books showed that the plaintiff at that time was not indebted to the defendant. The defendant testified that the books did not show some of his personal transactions with the plaintiff. However, he designated advances "evidenced by notes," and he failed to produce such notes. In view of the fact that the evidence (except defendant's oral testi-

mony) failed to show any indebtedness of the plaintiff to the defendant at that time, the last sentence of the Exhibit A is especially interesting. The books showed the personal accounts of the defendant as well as that of the plaintiff, and it is obvious that if the plaintiff owed either the defendant, or his business, any money the books would have reflected it. It other words, if the plaintiff was indebted to the defendant, the latter undoubtedly would have had written evidence of it and would have produced such evidence at the trial.

It should be observed that at the time of the check transaction the defendant made the plaintiff a present of a suit of clothes at a cost of $25. This item was the subject of counterclaim No. 7.

■ There is little controversy about the overtime worked by the plaintiff. The defendant, according to his books, paid the plaintiff $12 per week overtime from November 2, 1940, to February 20, 1942, and regular time pay during that period of $28 per week of forty hours. A simple calculation based on these data reveals that the plaintiff worked eleven and three-sevenths hours overtime each week. In effect, the defendant proved by his own records the overtime worked by the plaintiff. The result of the calculation is in substantial accord with the testimony of the plaintiff. The aggregate overtime for the period was seven hundred sixty-five (765) hours.

The plaintiff had been paid $40 per week for about ten years or $1 per hour for a forty hour week, which would entitle him to $1.50 per hour overtime pay or a total of $1,147.50 plus liquidated damages under the law of an equal amount plus an attorney's fee of $200.

The defendant in this case simply showed a persistent determination to ignore the Fair Labor Standards Act and to continue his business according to established custom. He chose to take back from the plaintiff the money due him as calculated by the Wage Hour Division, "because he needed the money in his business" as he explained, according to the testimony of the plaintiff. Obviously he altered his records and devised a bookkeeping system in an effort to evade the provisions of the act.

The findings of fact, conclusions of law and order for judgment are fully justified, and there is no substantial ground for a new trial. The motions are overruled.